FREEMAN, Respondent, v. WITHERS, Appellant.

(No. 7,616.)
(Submitted February 9, 1937.   Decided February 23, 1937.)
[65 Pac. (2d) 601.]

*Mr. D. W. Doyle,* for Appellant.

*Mr. Edward V. Ahern* and *Mr. Cedor B. Aronow,* for Respondent.

168

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action to recover a claim for wages. The jury found for plaintiff. A motion for new trial was denied and the appeal is from the judgment.

The first question presented is whether the complaint is sufficient. It alleges that plaintiff entered the service of defendant at his instance and request as an oil-well driller on certain described property at the agreed and reasonable compensation of $10 a day; that plaintiff worked for fifty-four days; and that the total value and agreed compensation earned is the sum of $540, only $35 of which has been paid.

In considering whether the complaint is sufficient, we keep ▉▉▉ in mind the rule that it is to be construed liberally with a view to substantial justice between the parties, and that whatever is necessarily implied in or is reasonably to be inferred from the allegations is to be taken as directly averred. (*Doane* v. *Marquisee*, 63 Mont. 166, 206 Pac. 426; *Cook* v. *Galen*, 83 Mont. 334, 272 Pac. 250; *Griffiths* v. *Thrasher*, 95 Mont. 210, 26 Pac. (2d) 995.) Tested by these rules of interpretation, the complaint was sufficient. It is fairly inferable from the complaint alleging, as it does, that plaintiff entered the service of defendant at his instance and request at the agreed and reasonable compensation of $10 a day, that the agreed compensation was the compensation agreed upon by the parties. The complaint sufficiently shows a contract between the parties, particularly in the absence of a special demurrer. The complaint, alleging what the agreed compensation was, is not defective for also alleging that it was the "reasonable" compensation, for when the agreement fixes the compensation the stipulated compensation becomes the reasonable compensation. (*Wilcox* v. *Newman*, 58 Mont. 54, 190 Pac. 138; *Schwab* v. *Peterson*, 80 Mont. 214, 260 Pac. 711.) The fact that the jury by their verdict found the reasonable value of the services, rather than the stipulated compensation, is immaterial

where the amount of the verdict was in fact the amount fixed by the agreement.

The only other question presented is whether the evidence was sufficient to support the verdict. It is conceded by plaintiff that he was employed by Mr. Ellis. Defendant contends that the evidence was insufficient to show that Ellis was his agent; hence the sufficiency of the evidence turns upon the question of agency.

The evidence of plaintiff, briefly summarized, shows that he went to work as an oil-well driller at the request of Ellis on October 3, 1930. Plaintiff testified, without objection except the general objection challenging the sufficiency of the complaint that Ellis "was the foreman in charge of the machine"; he was in charge for Mr. Withers; that he worked for 54 days; that Withers came to the well from time to time; that defendant paid him the sum of $10 by check and that plaintiff received an additional $25, which he thought was paid by Withers; that defendant "fired" him on Tranksgiving Day and then said, "As soon as we get to town he would settle up." Instead of paying when they reached town, plaintiff testified: "He offered me his note and I told him I couldn't eat on a note"; that defendant then said as soon as the bank opened next morning he would get in and settle up the bills. Plaintiff said he called defendant on the telephone at Conrad by long distance asking for the money, and that defendant said "he would be up in a few days and settle up all those bills"; he called him by telephone four different times and received the same assurance each time. Plaintiff said he went to Conrad to interview defendant in the spring of 1931 and offered to make a settlement, and that defendant then assured him that "he would get the rest of the boys together the following morning and see what could be done." He saw defendant next morning, Mr. Jones and Mr. Emrick being present, and that defendant said "he was willing to pay his share if they were willing to pay theirs, and they said that they did not have any share and no responsibility for the deals that he made while he was at Havre; that it was solely up to him to settle up the bills."

Plaintiff said that he knew defendant paid other bills arising out of the drilling of that oil and gas well, including grocery bills, board bills, and merchandise furnished to the crew drilling the well. On cross-examination he testified that Withers said he owned the equipment used in drilling the well.

Toney Wick testified that he ran a hotel in Havre during the time the work in question was being done; that Withers guaranteed the hotel bill for the crew working on the oil structure; and that defendant told him, "It is my crew and I will see that it is paid." He also testified that he listened in on the telephone when plaintiff called defendant by long distance and corroborated plaintiff to the effect that defendant promised plaintiff that he would settle up the bills.

Claude Christgau testified that he helped around the well-drilling rig as a handy man; he, too, was hired by Ellis. He was discharged and brought action in the justice court, naming R. A. Jones, E. C. Ellis, and A. L. McDonald as defendants, attached the rig, and was paid in Mr. Lamey's office at Havre. He said: "I think Mr. Withers produced the check; as I recall he gave the check to Mr. Lamey."

John Stoican, Sr., testified that he sold lumber that was used in the drilling operations. Christgau and Christiansen went to his place near the drilling operations and bought the lumber; it was worth $117.20 new. He was told they would pay the price of new lumber. He also furnished to McDonald $15 worth of gas and oil used in the operations. He later saw defendant and inquired about payment for the lumber, and defendant said: "Will you take my personal note or have check?" The witness said he replied by saying that he would rather have money. Thereupon he was invited to go to Havre the next day, Thanksgiving Day, to receive payment, defendant agreeing to provide the means of transportation; that he accepted the invitation; and that defendant, instead of paying, said: "You wait until tomorrow morning, until the bank is open." He assigned his account in writing to his son. He also testified that Tom McDonald hired his truck to be used at the well and employed his son on October 5th. McDonald

offered $8 a day for the truck and the son's services. The truck was used for eighteen days.

Mr. Anderson, a groceryman at Havre, testified that defendant paid the grocery bill for groceries furnished to those working at the well.

John Stoican, Jr., testified that he worked as a truck driver for eighteen days on the same operations. He was employed by McDonald and was to receive $4 a day for his services and $4 for the truck, with board and room, and that he is the holder of his father's claim which was assigned to him.

The evidence offered by defendant was in sharp conflict with that offered by plaintiff. In general, defendant produced evidence to the effect that R. A. Jones was the owner of an oil and gas lease on the property on which the well drilling operations were carried on, as well as others; that in September, 1931, Jones made a drilling contract with Ellis and McDonald to drill the well in question; the contract was introduced in evidence. Subsequently Jones, Ellis, and McDonald rented a rig and placed it upon the premises to do the drilling. It was testified that defendant later purchased the rig; that during the time of the drilling defendant had nothing to do with the operations; that the only interest he had was a one-fourth interest in the leases; that defendant furnished the casing for the well; that after drilling operations ceased, defendant tried to induce all the labor and material claimants to accept 50 per cent. of their bills in cash and the balance to be represented by a 60-day note, in which event he would take over the operations, finish the well, and assume all the obligations; that the claimants rejected the proposal and it was accordingly abandoned.

In testing the sufficiency of the evidence to support the verdict for plaintiff, we must view the evidence in the light most favorable to plaintiff, and it is not our province to attempt to pass upon the preponderance of the evidence,—that was for the jury, and if there be substantial evidence in support of the verdict, it must stand. (*Wibaux Realty Co.* v. *Northern Pac. Ry. Co.*, 101 Mont. 126, 54 Pac. (2d) 1175;

*Heckaman* v. *Northern Pac. Ry. Co.,* 93 Mont. 363, 20 Pac. (2d) 258; *Awbery* v. *Schmidt,* 65 Mont. 265, 211 Pac. 346.) .

An agency may be either actual or ostensible. (Sec. 7931, ▮▮ Rev. Codes.) It may be created by a precedent authorization, or a subsequent ratification. (Sec. 7937.) It may be implied from conduct and from all the facts and circumstances in the case (2 C. J. S., p. 1043), and may be shown by circumstantial evidence. (*Doney* v. *Ellison,* 103 Mont. 591, 64 Pac. (2d) 348.) Also, ratification may be implied from the acts and conduct of the alleged principal. In Mechem on Agency, second edition, section 433, it is said: "So approval and ratification are usually clearly shown where the person, on whose behalf the act was done, voluntarily recognizes it as binding upon him, and proceeds, with knowledge of the facts, to perform the obligations which it imposes. Thus, where the alleged principal voluntarily * * * delivers material in pursuance of an unauthorized contract for its sale, or makes partial payments upon an unauthorized contract, or otherwise proceeds to act upon and perform it, there is strong evidence of ratification."

In 2 C. J. 489, it is said: "Generally speaking, a ratification may be implied from any acts, words, or conduct on the part of the principal which reasonably tend to show an intention on the part of the principal to ratify the unauthorized acts or transactions of the alleged agent, provided the principal in doing the acts relied on as a ratification acted with knowledge of the material facts. This rule is particularly applicable where it appears that the principal has repeatedly recognized and approved similar acts done by the agent, or where his conduct is inconsistent with any other intention."

The jurors are the exclusive judges of the weight and cred-▮ ibility of evidence. (Sec. 10508, Rev. Codes.) They were at liberty to reject the evidence offered by defendant and accept that offered by plaintiff, if they saw fit to do so, as apparently they did.

The jury was warranted in finding from the evidence that ▮ defendant, with knowledge of the facts relating to the

expenses for labor and materials in drilling the well in question, ratified the acts of Ellis and others who acted in hiring men and in buying materials used in the operations in drilling the well, and hence in finding for plaintiff.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.