DAVID HAMILTON, Plaintiff and Respondent, v. LION HEAD SKI LIFT, INC., Defendant and Appellant.

No. 10195.

Submitted June 8, 1961. Decided July 21, 1961.

363 P.2d 716.

Bolinger & Drysdale, H. A. Bolinger, Jr., Bozeman, for appellant. H. A. Bolinger, Jr., argued orally.

Jones, Olsen & Dowlin, William V. Moore, Paul G. Olsen, Billings, for respondent. Paul G. Olsen argued orally.

MR. JUSTICE ADAIR delivered the Opinion of the Court.

This is an appeal by the defendant, Lion Head Ski Lift, Inc., a Montana corporation, from a judgment against it and in favor of the plaintiff, David Hamilton. The action is to recover wages due and owing and for money expended by the plaintiff for the use and benefit of the defendant corporation.

For his first cause of action, the plaintiff Hamilton alleged that the defendant, Lion Head Ski Lift, Inc., was engaged in

operating a ski lift in Gallatin County, Montana; that on or about the 15th day of September, 1957, the defendant corporation entered into an agreement with the plaintiff Hamilton whereby the corporation employed Hamilton as the manager of the defendant's ski lift operation and area at the agreed sum of $400 per month during such time as the ski lift was not in operation, and at the agreed sum of $450 per month for the plaintiff's services when the defendant's ski lift was in operation; that the plaintiff Hamilton entered upon the performance of such contract and duly performed all the terms and conditions on his part to be performed until July 6, 1958; and that there was due and owing him therefor from the defendant corporation the sum of $685 as wages plus a statutory penalty and a reasonable attorney's fee.

For his second cause of action, the plaintiff Hamilton alleged that during his employment as manager for the defendant corporation's ski lift and area, and in the performance of his duties, he incurred expenses at the instance and request of the defendant corporation and for its benefit in the amount of $1,118.83 for which the plaintiff is entitled to reimbursement, and for which he made a demand which the defendant has refused.

The defendant, Lion Head Ski Lift, Inc., admitted that it is a Montana corporation engaged in the operation of the ski lift operation, but denied all the other allegations of the plaintiff's complaint.

No officers of the defendant corporation could be found within the State of Montana, hence, service of process was made upon the secretary of state pursuant to R.C.M.1947, § 93-3008. A writ of attachment was issued and attachment notice was duly posted on the operation building at the base of the lift and on the service building at the top, all on defendant's area in Gallatin County, Montana.

Dr. Raymond G. Bayles, the reputed agent of the defendant corporation, engaged counsel to represent the defendant corpo-

ration and to defend the action so brought against it. The testimony in the record before us is to the effect that the counsel so employed by Dr. Bayles were to be paid by him. No officers or directors of the defendant corporation gave any testimony in the cause nor did any officer or director thereof attend the trial. Dr. Bayles was the only person that gave any testimony whatever in support of the defendant corporation's pleading and denial of the plaintiff's employment by the defendant corporation.

The evidence may be summarized as follows:

Between September 15, 1957, and July 6, 1958, the defendant corporation was engaged in the business of operating a recreational ski area in Gallatin County, Montana, situate about eight miles southwest of the town of West Yellowstone, Montana, at a place known as Lion Head Mountain.

In August of 1957, Dr. Raymond G. Bayles, as the reputed agent of the defendant corporation, entered into an agreement with the plaintiff, David Hamilton, whereby Hamilton agreed that commencing September 15, 1957, he would manage the defendant corporation's ski lift and ski area during the 1957-1958 winter ski season for the agreed compensation of $400 per month in the months when no skiing was available and for the sum of $450 per month for the months when the ski lift was in operation and skiing available.

The plaintiff Hamilton testified that he entered into the aforesaid agreement only after Dr. Bayles had represented to him that Dr. Bayles owned and controlled the majority of stock in the defendant corporation. Dr. Bayles denied that he had made any such representation.

The evidence is to the effect that Dr. Bayles owned and exercised control of a block of stock in the defendant corporation, by virtue of his ownership in the Stagecoach Inn, a Montana corporation, operating at West Yellowstone, Montana.

The evidence further shows that the Stagecoach Inn was the principal asset of the West Yellowstone Hotel Corporation, of

which Dr. Bayles then was the majority stockholder, officer, director, and overseer and that the West Yellowstone Hotel Corporation owned and controlled 120 shares of common stock and 15 shares of preferred stock in the defendant, Lion Head Ski Lift, Inc.

There is also testimony in the record before us that Dr. Bayles had previously entered into similar arrangements with other persons as to the management of the same ski lift and ski area. The undisputed evidence is that Dr. Bayles took control of the Stagecoach Inn in 1955, two seaons before the plaintiff commenced to operate the ski area. The record shows that Bill Whitstone operated the ski lift and area for the first season (1955-1956) and that during the following season (1956-1957), Dr. Bayles' son, Dick Bayles, operated the ski lift and area.

Both Bill Whitstone and Dick Bayles conducted their operation and management of the lift and area pursuant to verbal agreement with Dr. Bayles.

Dr. Bayles testified that the plaintiff Hamilton was hired to operate and manage the ski area, not because Dr. Bayles had any authority to act for the defendant corporation, but because it had been the custom and practice for the Stagecoach Inn to operate the ski area and he (Dr. Bayles) was merely continuing that practice and custom when he hired the plaintiff Hamilton.

The plaintiff Hamilton entered into his duties as manager of the defendant, Lion Head Ski Lift, Inc., on September 15, 1957, and his first responsibility was to get the lift into operating condition. This required repair of the motor, safety switches, electric lines, and telephone lines, and mechanical repair to the lift itself and related equipment. To make these necessary repairs, the plaintiff Hamilton was required to, and did in fact, hire five employees.

Prior to the actual (1957-1958) skiing operation, the employees so hired were paid by the plaintiff Hamilton out of

funds which he obtained from Dr. Bayles and from the Stagecoach Inn. The same sources provided the funds to meet the other expenses. These funds were supplied to the plaintiff Hamilton on a loan basis. During the period between October 5, 1957, and December 5, 1957, the Stagecoach Inn advanced the sum of $580, no part of which Hamilton ever repaid. After the commencement of the skiing operations the employees were paid out of the proceeds collected from the ski lift and ski school. The other operating expenses were also provided from the same source. Final accounting for the 1957-1958 ski season disclosed an operating loss of approximately $1,500.

The skiing operation for the 1957-1958 season ended on April 1. 1958, from which date to July 6, 1958, the plaintiff Hamilton, operated the ski lift as a sight-seeing enterprise. For services rendered by him prior to April 1, 1958, the plaintiff Hamilton had been fully compensated. However, from April 1, 1958, to July 6, 1958, the plaintiff Hamilton only received $515 in wages. The plaintiff Hamilton claimed, and the jury found, that Hamilton was entitled to an additional sum of $665 as wages for such last-mentioned period.

The jury found for the plaintiff in the sum of $1,118.83 due Hamilton to reimburse him for money expended by him in behalf of the defendant, Lion Head Ski Lift, Inc.

The trial court adjudged that Hamilton was entitled to judgment of $33.25 as a statutory penalty and $450 for counsel fees as was prayed for by the plaintiff in his first cause of action.

Several specifications of error are set forth in the brief of the appellant, Lion Head Ski Lift, Inc. However, the question decisive of this appeal is a determination of whether the defendant corporation can be held answerable for the moneys due Hamilton under his agreement with Dr. Bayles.

It stands undisputed that the plaintiff Hamilton was employed by Dr. Bayles. Hamilton contends that when he was employed by Dr. Bayles that the latter was then acting as the

agent of the defendant corporation. On the other hand, the defendant corporation contends that there is insufficient evidence to show that Dr. Bayles was the corporation's agent.

In our opinion, there is ample evidence to establish the agency. "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." R.C.M.1947, § 2-101.

In Freeman v. Withers, 104 Mont. 166, 172, 65 P.2d 601, 603, this court announced the rule thus: "An agency may be either actual or ostensible. (Sec. 7931 [Revised Codes 1921, now R.C.M.1947, § 2-104].) It may be created by a precedent authorization, or a subsequent ratification. (Sec. 7937 [Revised Codes 1921, now R.C.M.1947, § 2-114].) It may be implied from conduct and from all the facts and circumstances in the case (2 C.J.S. Agency § 19, p. 1043), and may be shown by circumstantial evidence. (Doney v. Ellison, 103 Mont. 591, 64 P.2d 348.)"

██ "* * * agency is a matter, not to be presumed, but to be proven, and the burden of proving it must be borne by the party who asserts it." Koppler v. Bugge, 168 Wash. 182, 197, 11 P.2d 236, 241.

In 2 C.J.S. Agency § 3, pp. 1035, 1036, it is said: "With reference to their authority in fact agents are either actual agents or ostensible agents; the former if expressly or by implication in fact authorized to act for the principal on his behalf, the latter if the principal has intentionally or by want of ordinary care induced third persons to believe one is his agent, although no authority has been conferred on him, either expressly or by necessary implication."

In Ulen v. Knecttle, 50 Wyo. 94, 103, 104, 58 P.2d 446, 111 A.L.R. 565, it is said: "Actual authority may be express or implied. Since there is some confusion in the cases as to what constitutes express authority, we may say that we understand thereby authority distinctly, plainly expressed, orally or in writing. Implied authority may, and in fact must, be shown

by the course of dealing of the parties and other circumstances in the case.''

That Dr. Bayles was acting as the agent of the defendant corporation, and not in his individual capacity when making the contract with the plaintiff, is sustained by the record. Actual agency is established from the following evidence, viz.:

The Stagecoach Inn, prior to being sold to Dr. Bayles in 1955, acted as the agent of the defendant, Lion Head Ski Lift, Inc., in operating the latter's business.

After he bought the Stagecoach Inn, Dr. Bayles continued to operate and manage the business of the Lion Head Ski Lift, Inc. Since that time (1955) Dr. Bayles has been in possession of the defendant's principal office and place of business.

In 1955, Dr. Bayles placed Bill Whitstone in charge to manage and operate the defendant's business during the 1955-1956 skiing season.

In 1956, Dr. Bayles placed his son, Dick Bayles, in charge to manage and operate the defendant's business during the 1956-1957 skiing season.

In 1957, Dr. Bayles placed the plaintiff, David Hamilton, in charge to manage and operate the defendant's business during the 1957-1958 skiing season.

Throughout his testimony, the plaintiff Hamilton swore that he believed and relied upon the representations of Dr. Bayles to the effect that Dr. Bayles controlled the majority of stock in the defendant corporation at the time when Hamilton and the doctor entered into the employment agreement. Under these circumstances, the plaintiff Hamilton was warranted in recognizing and dealing with Dr. Bayles as the agent of the defendant corporation.

The foregoing evidence, supplemented by the fact that Dr. Bayles engaged counsel and agreed to pay such counsel to defend this action on behalf of the defendant corporation, and the additional fact that no officers or directors of the defendant corporation either appeared at the trial or gave any testimony

herein, rather definitely tend to indicate that Dr. Bayles entered into the agreement with the plaintiff Hamilton as the actual agent of the defendant corporation.

In 2 C.J.S. Agency § 23, p. 1045, it is said: "The relation of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. If, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency."

A corporation being but an artificial person must have a directing hand to enable it to function. A careful examination of the record before us definitely establishes the fact that Dr. Bayles became and was the directing hand of the defendant corporation.

Each contention advanced by the defendant corporation has been examined and we find no merit therein.

Accordingly, the judgment of the district court is affirmed. It is so ordered.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES and JOHN C. HARRISON concur.