JOHN LAKES, Plaintiff and Appellant, *v.* JOSEPH P. ORLEY, Defendant and Respondent.

No. 10958.
Submitted September 12, 1966. Decided November 16, 1966.
420 P.2d 151.

326

Vance & Leaphart, Helena, John T. Vance (argued), Helena, for appellant.

Robert L. Johnson (argued), Lewistown, for respondent.

HONORABLE THOMAS DIGNAN, District Judge, sitting in place of MR. JUSTICE STANLEY M. DOYLE, delivered the Opinion of the Court.

Plaintiff appeals from a judgment entered on a jury verdict in favor of the defendant-respondent on the question of who is the owner and entitled to possession of an airplane. The amount of damages was later determined by the court without objection on the part of either party and no error is specified as to the amount or the method of determining damages.

Plaintiff-appellant is John Lakes, an Illinois physician, referred to herein as Lakes. The defendant-respondent is Joseph P. Orley, a Montana physician, who will be referred to as Orley.

Appellant Lakes asserts thirteen specifications of error but the principal issue presented on this appeal is whether or not there is substantial evidence to support the verdict of the jury.

Respondent Orley contends that there is substantial evidence to support the proposition that Lakes either ratified or affirmed the sale of the disputed airplane or that Lakes was estopped to challenge the sale. Respondent refers this court to Freeman v. Withers, 104 Mont. 166, 171, 65 P.2d 601, 603, for a test of the sufficiency of the evidence necessary to support a jury verdict, and we quote:

"In testing the sufficiency of the evidence to support the verdict for plaintiff, we must view the evidence in the light most favorable to plaintiff, and it is not our province to attempt to pass upon the preponderance of the evidence, that was for the jury, and if there be substantial evidence in support of the verdict it must stand. [Citing previous cases.]"

The record before this court discloses that there is substantial evidence in support of the verdict.

Lakes purchased the plane, which is the subject of this lawsuit, on September 2, 1961. On September 21, 1961, Lakes leased the plane to one Paul Kirkman. This lease agreement continued until around April of 1962 when Lakes took the plane back. Kirkman then used the plane periodically from April until August 1962.

On August 6, 1962, Lakes entered into a sales contract with Kirkman selling to Kirkman the disputed plane and a Mercedes-Benz sports car. The purchase price was $20,500 and the sales contract included an additional $1,500 which was the amount of debt then owing from Kirkman to Lakes. The amount of the sales contract was $22,000 and was to be paid in the following installments: $5,000 on September 6, 1962; $5,000 on October 6, 1962 and $12,000 on November 6, 1962. Lakes was buying and selling airplanes as a business and was familiar with bills of sale, chattel mortgages and sales contracts and the title requirements necessary for the transfer of airplanes. A recording system for all instruments affecting title to aircraft is established under Federal law, 49 U.S.C.A. § 1301 (16-17) and § 1403(d), 235 F.Supp. 599.

On August 24, 1962, Kirkman and an unknown man entered the office of Mrs. Trudy Young, a notary public in St. Louis County, Missouri. Kirkman introduced the man to Mrs. Young as John Lakes, although the man was, in fact, an imposter. Mrs. Young notarized the signature of John Lakes that appeared on the federal aviation bill of sale that was shown to her. Lakes claimed that the signature on that bill of sale was forged. Paul Kirkman was listed as purchaser of the plane. Kirkman then flew the plane from Missouri to Denver, Colorado, and on August 28, 1962, sold the plane to Combs Aircraft Company after a title check made by the Combs Aircraft Company. Combs Aircraft Company then sold the plane to Montana Aircraft Company of Billings, which in turn sold the

plane to Dr. Orley on September 14, 1962. Lakes and Kirkman engaged in many business transactions for a period of years before Lakes turned the disputed plane over to Kirkman pursuant to the contract of August 6, 1962. Lakes had lost money before in his dealings with Kirkman having invested $18,000 in an oil well promotion of Kirkman's that failed. There were other airplane and automobile transactions between the two.

Lakes testified that he did not learn of the sale by Kirkman to Combs Aircraft until December 13, 1962, and that he immediately contacted both Orley and the Combs Aircraft. Orley and Combs Aircraft testified that Lakes did not contact them until February of 1963. Lakes received one check for $5,000 from Kirkman that was due under the contract of August 6, 1962. This check was dated September 6, 1962, and was paid by the bank on September 10, 1962. Lakes did not receive his October or November payments which would have paid for the aircraft. He explained his indifference to these payments by saying that he had suffered a cardiac insult on October 24, 1962, that kept him incapacitated for about month. Lakes however, admitted he purchased another aircraft just three weeks after his October 24 illness.

In a deposition given prior to the trial, Lakes testified that following the discovery of the sale of the plane he gave Kirkman until the first of January to pay. At the trial he modified his position by saying that he gave Kirkman several days to either pay or produce the plane. Lakes also met later with Kirkman in January or February in an attempt to get his money from Kirkman. Lakes further went to the F.B.I. and various law enforcement officers alleging the theft of his plane by Kirkman, but no criminal charges were ever filed.

As we have pointed out heretofore, Lakes met with Kirkman on several occasions after the August sale and pressed Kirkman for his money even after learning of the sale but he waited some months before notifying Combs Aircraft and Dr. Orley that Kirkman had allegedly stolen his airplane.

In view of the negligence of Lakes, this court invokes section 49-135, R.C.M.1947, which provides:

"Where one of two innocent persons must suffer by the acts of a third, he, by whose negligence it happened, must be the sufferer."

There is substantial evidence to support the proposition that Lakes either ratified or affirmed the sale of the plane to Combs Aircraft by Kirkman.

The evidence adduced at the trial supports respondent's position that the jury could have concluded that Lakes was estopped to challenge the sale by Kirkman.

Lakes admitted that he and Kirkman had a history of dealing with each other, of using bills of sale for cars and aircraft in blank and with failing to record title documents in order to avoid transfer taxes.

Lakes allowed Kirkman to have the plane, made no inquiry for a number of months about the plane even though the payments were due under the contract, and failed to make a diligent effort to recover the airplane after the payments became due.

It would be inequitable to make Dr. Orley suffer the consequences of Lakes' misplaced trust and negligence, especially after their previous unsatisfactory dealings.

There is substantial evidence to support the proposition that Lakes is estopped to challenge the sale by Kirkman.

We have examined each of the specifications of error and have not found reversible error in them.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and CASTLES, concur.