MARY V. ELKINS, as Administratrix of the Estate of HAROLD G. WHITE, Deceased, Plaintiff and Appellant, v. HUSKY OIL COMPANY, a Corporation, Defendant and Respondent.

No. 11444.
Decided June 5, 1969.
455 P.2d 329.

Cooke, Moulton, Bellingham, Longo & Mather, F. D. Moulton (argued), Billings, Sullivan, Guterson, LaRose & Rindal, Joel A. C. Rindal (argued), Seattle, Wash., for appellant.

Anderson, Symmes, Forbes, Peete & Brown, Billings, Wey-mouth D. Symme (argued), Billings, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Plaintiff administratrix, Mary V. Elkins, brought this action to recover damages for the wrongful death of Harold G. White. Defendant Husky Oil Company moved for summary judgment, the motion was granted and judgment entered for the defendant. This appeal followed.

The record discloses that decedent, his wife and their four children, were traveling east through Montana in a pickup camper, and having a Richfield credit card honored at Husky stations they stopped at Parker's Husky Station at Laurel, Montana. The station was owned by Walter Parker and one of his station attendants was his son, Tom Parker. Tom Parker had allowed a gasoline storage tank to overflow and the over-flow spread into the service station and became ignited. An explosion and fire ensued at the time decedent's vehicle was parked at the station to purchase gasoline. Decedent suffered severe injuries from which he died the following day.

At the time this action was filed Walter Parker was also named as a defendant but Parker's insurer paid their policy limits and Parker was released as a defendant.

Plaintiff contends that the summary judgment should not have been granted because there were genuine issues of fact to be decided and asserts the evidentiary facts were adequate under each of four approaches to the question of Husky's liability. They consist of, first, the existence of an actual agency between Parker and Husky; second, the existence of an apparent or ostensible agency, sometimes called an agency by estoppel; third, the handling of an inherently dangerous product im-poses strict liability; and fourth, that Husky was liable because of its negligent performance of a voluntary undertaking.

Under her first approach plaintiff argues that the record

revealed a degree of control by Husky over Parker from which a jury could have determined liability based on factual agency.

Before proceeding to a discussion of these contentions it would be well to note that certain facts are not disputed. It appears that Walter Parker owned and operated the service station and at the time of the accident no Husky employee or representative was present. The only property owned by Husky on the premises were two gasoline pumps, signs, one Enco Islander with two fluorescent lights, and air compressor with General Electric motor and sun lights. Parker also sold products other than those purchased by him from Husky and at the time of the fire Parker owned all of the gasoline in the above-ground and under-ground storage tanks. Parker purchased the station in 1955 and financed through a local bank in Laurel; the station was in need of considerable remodeling which he undertook to do. An employee of Husky physically helped Parker on occasion in doing this work but Parker testified as to this assistance in these words: "Just off and on, he would stop for an hour and a half or two hours and then maybe it would be a week or ten days before I would see him again."

There is no dispute as to how the accident occurred, as hereinbefore, related. The only written agreements between Parker and Husky were an equipment lease agreement and a truck rental agreement, neither gave Husky any authority over Parker. Parker was not required to file any written reports with Husky and it was Parker's discretion as to what merchandise he would stock. Parker's station was not inspected by Husky for safety, he could sell any petroleum products he chose, he was not required to wear any particular type of uniform or to operate during any particular set hours. Husky did not require Parker to sell its products at any certain price, although it made price recommendations but Parker did not have to follow them and could set his own prices.

Plaintiff, citing Barovich v. City of Billings, 135 Mont. 394, 340 P.2d 819, asserts that no hard and fast rule can be ap-

plied to any case in determining whether the relationship of master and servant or principal and independent contractor exists and that each depends upon its particular facts. It cannot be disputed that the main distinction between servant or employee and an independent contractor lies in the right of control over the performance of the work.

Plaintiff outlines as facts to be considered in making this determination: (1) that Husky's ownership of the pumps, lights, signs, air compressor and water and air stand at the pumps are closely geared to the sale of petroleum products while the other items of property owned by Parker are not; (2) that the only gasoline sold by Parker was Husky's brand; (3) that Husky probably would terminate Parker's sale of its merchandise if he advertised and sold products other than those of Husky. Further, it is pointed out that Husky made price rebates to Parker during a price war in order to keep Parker in business. As to the hours the station should be open, Husky would have preferred the station to be open seven days a week and it admitted that if the traffic were good it would counsel Parker with regard to keeping open on Sundays, whether it was profitable to him or not.

Plaintiff asserts that from this evidence it is apparent that two important criteria of actual agency existed, compensation and hours of operation.

We are impressed with the holding in Coe v. Esau, Okl (1963), 377 P.2d 815. This case was an action brought by a car owner against a filling station operator and Continental Oil Company, owner of the station premises, to recover for damage to his car from the lack of adequate lubrication occasioned by the escape of oil through a faulty oil filter gasket installed by the station operator. Each defendant interposed a demurrer to the evidence of the plaintiff and insofar as we are here concerned the trial court sustained the demurrer of the Continental Oil Company. The appeal presented the question whether the facts and circumstances adduced in evidence were sufficient to

raise an inference that the station operator was a mere agent or employee of Continental Oil Company.

The Court in its opinion states:

"In support of his argument that Esau was an agent of Continental in the operation of the filling station where the faulty service work was performed upon plaintiff's automobile, plaintiff calls our attention to these facts: (1) Continental owned the premises upon which the filling station in question was situated; (b) Continental's name or trade mark was prominently displayed upon the station premises; (c) The name 'Conoco', Continental's trade mark for its gasoline and oil products, would appear on advertising matter and handbills distributed by Esau; (b) In the classified pages of the Tulsa telephone directory Esau's station was listed under the heading 'Conoco Service Stations' and Continental's triangular trade mark; (e) Esau extended the privilege of charging for gasoline, oil and service sold to all holders of Continental credit cards who were billed directly by Continental; (f) Esau received advice and suggestions from Continental concerning the standard of cleanliness at his station, although he did not have to 'abide' by them; (g) In consideration for the use of the station premises and equipment Esau paid one and one-fourth cents on each gallon of gasoline sold; (h) Although Esau controlled his business hours, he was required to occupy the premises and operate the station 'or he would lose such right' ''.

Many of the plaintiff's contentions here, with regard to the relationship between Husky and Parker, are similar to the facts in the Esau case. The Court's opinion continued:

"It may be stated as a general rule that tenancy alone will not render the landlord liable for the torts of his tenant. Neither the mere fact of ownership of property nor that goods marketed under the trade mark or trade name of the landlord are advertised and sold upon the demised premises is deemed sufficient to raise an inference that the tenant-vendor is the agent

or employee of the landlord. Cities Service Oil Co. v. Klindt, 200 Okl. 64, 190 P.2d 1007, 1011; Grieving v. La Plante, 156 Kan. 196, 131 P.2d 898; 2 C.J.S. Agency § 2, p. 1030. It is indeed a matter of common knowledge and practice that distinctive colors and trade mark signs are displayed at gasoline stations by independent dealers of petroleum product suppliers. These signs and emblems represent no more than notice to the motorist that a given company's products are being marketed at the station. See Cawthorn v. Phillips Petroleum Co. (Fla. App.), 124 So.2d 517, 83 A.L.R.2d 1276; Sherman v. Texas Co., 340 Mass. 606, 165 N.E.2d 916; Lindsay v. Francis (Mo.App.), 107 S.W. 2d 97; Greiving v. La Plante, supra, and annotations beginning at p. 1292, 83 A.L.R.2d.

"Neither can we view the dealer's practice of honoring the producer's credit cards as indicative of a master and servant relationship. The use of such cards constitutes a distinct business advantage to the station operator who is accorded full credit for all purchases made by the card holders. Cities Service Oil Co. v. Klindt, supra; see also Arkansas Fuel Oil Co. et al. v. Scaletta, et al., 200 Ark. 645, 140 S.W.2d 684, 689.

"The law itself makes no presumption of agency, and the burden of proving agency, including not only the fact of its existence but also its nature and extent, rests ordinarily upon the party who alleges it. Barall v. McDonald, 172 Okl. 276, 44 P.2d 997. Whether relation of master and servant does in fact exist between lessor of gasoline station and its lessee so as to render the doctrine of respondeat superior applicable, depends on whether lessor has the right to control, or exercise the right to control, lessee in the details of the work to be performed in the operation and management of the station. Cities Service Oil Co. v. Kindt, supra; Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632.

"The facts and circumstances adduced by plaintiff's evidence are insufficient to raise the necessary inference that Continental either had the right to control or exercised the right to control

the conduct of Esau in the operation of his station. Esau was free to, and did handle, tires and automotive accessories of other suppliers; he procured his own personnel, determined the daily business hours and the methods of doing business. The petroleum products supplied by Continental were sold to Esau on a cash basis. So far as the record discloses, Esau was not in any way restricted in adopting his own merchandising policies.

"Where the undisputed evidence concerning the status of the parties defendant to each other is reasonably susceptible of but a single inference, the question of their legal relationship, be it master and servant or contractor and contractee, is one purely of law. Fairmont Creamery Co. of Lawton v. Carsten et al., 175 Okl. 592, 55 P.2d 757, 758; Hawk Ice Cream Co. v. Rush, 198 Okl. 544, 180 P.2d 154, 156; Cook v. Knox, Okl., 273 P.2d 865, 869; and Burke v. Thomas, Okl. 313 P.2d 1082, 1087.

"We therefore hold that the trial court committed no error in sustaining Continental's demurrer to plaintiff's evidence. Cities Service Oil Co. v. Kindt, supra. See also Barber v. Continental Oil Co., Okl. 325, P.2d 949."

It appears to us that this opinion correctly sets forth the applicable principles of law to guide us in our consideration of this case. Section 2-101, R.C.M.1947, provides:

"*Agency defined.* An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency."

In Hamilton v. Lion Head Ski Lift, Inc., 139 Mont. 335, 363 P.2d 716, we held that in construing this statute agency is not presumed but must be proven and the burden of proving it must be borne by the party who asserts it. Since it clearly appears here that Parker was not representing Husky in dealing with third persons there has been no actual agency shown.

Turning then to plaintiff's second contention, being that of an apparent or ostensible agency. This type of agency is cov-

ered by two sections of our code. Section 2-106, R.C.M.1947, provides:

*"Ostensible agency.* An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him."

Section 2-124, R.C.M. 1947, further provides:

*"Ostensible authority defined.* Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

It is plaintiff's view that even assuming no actual agency relationship existed between Husky and Parker, yet Husky permitted Parker to hold himself out as its representative, and that plaintiff's decedent and his wife were justified in relying on the ultimate responsibility of Husky for any negligence by Parker.

Apparently it is conceded that Husky could only be said to have held itself out to the Whites on the basis of the signs advertising "Parker's Husky Station" on the highway, signs over the station and the signs on the pumps and, secondly, by the fact that the credit card that the Whites had, issued by the Richfield Oil Company, bore an inscription on the back which read: "This card will also be honored at service stations of the following companies: United States: * * * Husky Oil Co. * * *", Husky Oil Company being listed among other oil companies. Plaintiff argues that these facts are sufficient upon which to base reliance and upon which Husky's liability could be predicated and therefore the question of whether or not such reliance was placed and if so placed, was justified, was a question for the jury and it was error for the court to have precluded such consideration.

In addition to what has been quoted heretofore from the Esau case it should be noted that in Searle v. Great Northern Railway Company, 189 F.Supp. 423, the U.S. District Court in Montana was confronted with an argument on the theory of ostensible

authority, it being contended, that even if the driver of a truck was not acting in the scope of his employment or on the master's business the master would still be liable for personal injuries allegedly suffered as a result of the negligent operation of the master's truck because, so far as relevant to our discussion here, the truck bore the insignia of the railroad company. The U. S. District Court there held that in order to rely upon a theory of ostensible authority there must be some words or conduct of the principal, some "holding out", upon which the plaintiff relied.

This Court has previously expressed itself in Hartt v. Jahn, 59 Mont. 173, 196 P. 153, to the effect that to create liability on the theory of ostensible agency the party sought to be held as principal must by reason of some act on his part have led the other party to believe that an agency existed even though no agency actually existed.

It is difficult to believe that the wording of the inscription on the back of the Richfield credit card which merely states that the credit card "will also be honored" by service stations of Husky constitutes a "holding out" by Richfield that Husky was their agent. We do not believe there was any issue requiring action by a jury.

The third legal theory raised by plaintiff was that even if the relationship between Parker and Husky was neither an actual or ostensible agency, at least Parker was an independent contractor in the retail marketing of Husky's petroleum products. This coupled with the fact that gasoline is an inherently dangerous product, causes the application of a recognized exception to the immunity afforded one supplying an independent contractor. In support of this contention plaintiff cites Ulmen v. Schwieger, 92 Mont. 331, 12 P.2d 856, wherein this Court stated:

"The general rule is that an employer is not liable for the wrongful or negligent acts of an independent contractor. To this general rule there are well-recognized exceptions. One exception is where the work to be done is intrinsically dangerous

or hazardous. This exception was pointed out in Shope v. City of Billings, 85 Mont. 302, 278 P. 826.''

We fail to follow the reasoning of plaintiff in this regard. If the plaintiff theory were correct there would have to be an independent contractor doing work for a contractor. Here there was no contractual relationship between Husky and Parker other than the equipment lease agreement and truck rental agreement. Parker was not an independent contractor of Husky, all the evidence indicates he was working for himself in his own business venture. Insofar as Husky and Parker were concerned their relationship was of a business nature, but Parker's business was operated by him for his own financial gain by purchasing and paying for products of Husky and reselling them to third persons. This contention is without merit.

As to their fourth legal theory plaintiff contends that liability of Husky could be predicated on its negligent performance of a voluntary undertaking, in that Husky assumed such supervision of the Parker operation that, upon the negligent performance of such supervision, liability must be imposed upon it.

We find little quarrel with the theory or the authorities cited in support of it, our only trouble comes when we attempt to find any proof that Husky ever undertook the performance of the voluntary undertaking of supervision of Parker's operation. It is true that in 1955 a Husky employee gave Parker some advice with respect to his remodeling of the premises following purchase. Nothing else appears in the record except admissions by employees of Husky that if they observed matters of general appearance, good housekeeping, such as clean rest rooms or deterioration of the physical plant, they would no doubt counsel with Parker regarding the matter, but there is no proof any of them ever did.

Finally, it is our view that but one conclusion can be drawn from the evidence before the district court—that is, no agency, actual or ostensible, existed between Husky and Parker, and

the motion for summary judgment was properly granted.

The judgment is affirmed.

MR. JUSTICES HASWELL, JOHN CONWAY HARRISON, CASTLES, and BONNER, concur.