No. 12164

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

_____

KATHLEEN A. HECK CALKINS, individually
and as Guardian Ad Litem of DEBRA HECK,
SALLY HECK, LAURA HECK and EDWARD HECK,
Minors,

Plaintiff and Appellant ,

-vs-

OXBOW RANCH, INC., a Montana Corporation,
d/b/a GILLIS AVIATION,

Defendants and Respondents.

_____

Appeal from:    District Court of the Thirteenth Judicial District,
                Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellants:

        Walter H. Bithell argued, Boise, Idaho.
        Howard I. Manweiler argued, Boise, Idaho.
        Jones, Olsen and Christensen, Billings, Montana.
        Webb and Tway, Boise, Idaho.

    For Respondents:

        Anderson, Symmes, Forbes, Peete & Brown, Billings,
          Montana.
        John L. Hilts argued, Billings, Montana.

_____

Submitted:  March 16, 1972

Decided APR 1 0 1972

Filed: APR 1 0 1972

_Thomas J. Kearney_
                        Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a summary judgment for defendant in a wrongful death action. The judgment was entered upon the granting of a motion for summary judgment by the district court of the thirteenth judicial district, Yellowstone County, Judge Charles B. Sande presiding.

The action was brought by Kathleen A. Heck Calkins as the surviving spouse of Donald E. Heck, deceased, and the natural mother and guardian ad litem of Debra, Sally, Laura and Edward Heck, who are minor children of the marriage of Kathleen A. Heck Calkins and Donald E. Heck, deceased.

Plaintiff, individually and as guardian ad litem, instituted action against defendant alleging that defendant furnished to Dow, Inc. a licensed commercial pilot by the name of Andrew Deichel, "* * * an employee, servant, and agent of said Defendant * * * to safely carry the said Donald E. Heck, as a passenger from Billings, Montana to Eugene, Oregon." It was the contention of plaintiff that the pilot was acting within the course and scope of his employment; that he was an agent of defendant at the time of the accident; and that he was negligent.

Defendant is Oxbow Ranch, Inc., a Montana corporation, doing business as Gillis Aviation.

On April 4, 1968, Donald E. Heck was killed while a passenger in an aircraft owned by his employer, Dow, Inc., a Wyoming corporation, with corporate headquarters located at Billings, Montana. The crash of the airplane occurred in Oregon, while Mr. Heck was on a business trip originating in Billings

enroute to Eugene, Oregon. Also killed were the pilot, Deichel, and Donald A. Dow, president of Dow, Inc. owner of the airplane and on whose business the trip was taken.

Defendant moved for summary judgment on the basis of the depositions in this action pursuant to Rule 56, M.R.Civ.P., on the grounds that the pilot, Deichel, was neither an actual nor an ostensible agent of the defendant and that there was no ratification of any of the acts of the pilot on the part of the defendant, such that the doctrine of respondent superior did not apply as to the defendant and that therefore no liability could be predicated upon any agency relationship of the defendant.

The issue is whether there is any evidence tending to establish an agency relationship implied or ostensible, upon the doctrine of respondeat superior. While the appellant's brief includes "actual" agency in its statement of the issue, it is conceded that there is no proof of actual agency.

First, appellant urges that where an appeal is taken from the granting of a summary judgment this Court will review the testimony in the most favorable aspect it will bear in support of a plaintiff's claim of the right to present the merits of his case to the fact finder. Mally v. Asanovich, 149 Mont. 99, 423 P.2d 294; Knowlton v. Sandaker, 150 Mont. 438, 436 P.2d 98.

In discussing a motion for summary judgment in Gallatin Tr. & Sav. Bk. v. Henke, 154 Mont. 170, 172, 461 P.2d 448, this Court citing from Silloway v. Jorgenson, 146 Mont. 307, 406 P.2d 167, said:

"'* * * the party opposing motion [for summary judgment] must present facts in proper form --- conclusions of law will not suffice; and the opposing party's facts must be material and of a substantive nature, not fanciful, frivolous, gauzy, nor merely suspicions.' 6 Moore's Federal Practice 2d, § 56.15[3], pp. 2346,2347; Hager v. Tandy, 146 Mont. 531, 410 P.2d 447."

In the instant case most of the parties to the arrangement of the flight are dead. This presents to the surviving spouse a difficult proof problem. But, proof of an actual or ostensible agency may be in the form of circumstantial proof as well as direct proof. In Freeman v. Withers, 104 Mont. 166, 172, 65 P.2d 601, this Court said:

"It [agency] may be implied from conduct and from all the facts and circumstances in the case * * * and may be shown by circumstantial evidence."

Also, in Hamilton v. Lion Head Ski Lift, Inc., 139 Mont. 335, 340, 363 P.2d 716, this Court said:

"'* * * agency is a matter, not to be presumed, but to be proven, and the burden of proving it must be borne by the party who asserts it.'"

Before proceeding to an analysis of the facts, we shall briefly set forth provisions pertaining to agency. Sections 2-104, 2-105, 2-106, and 2-124, R.C.M. 1947, define actual and ostensible agency. Section 2-106 states that an agency is ostensible when the principal intentionally, or by want of ordinary care, causes or allows a third person to believe another to be his agent who is not really employed by him.

The deceased pilot, Deichel, had worked for Herrod Aviation from January 1968 until April 1968, when he quit because he wanted a few days off prior to the commencement of new employment with Northwest Airlines as a pilot. Deichel had an Airline Transport Pilot's rating, the highest attainable. Deichel had never worked for Gillis Aviation.

- 4 -

In February 1968, Dow, Inc. had begun negotiations with Gillis Aviation for the purchase of an airplane. On February 16, Dow made a deposit on the aircraft. On March 30, Dow made a $1500 payment and financial arrangements at a bank to pay the balance. Gillis Aviation issued a bill of sale. This is the aircraft that crashed on April 4, 1968.

The two main officers and owners of Dow, Inc. were Donald A. Dow, President, and Terry Lowell, Vice-President. They had purchased the aircraft. They made all arrangements. The deceased Heck was their employee. Both Dow and Lowell either were taking flying lessons from Gillis Aviation or were planning to. The aircraft was to be used in Dow, Inc.'s business.

In addition to the business dealings between Dow, Inc. and Gillis Aviation on the purchase of the aircraft, Dow, Inc. had used certain of the pilots employed by Gillis Aviation to pilot the company aircraft. It is clear from the depositions that the company relied on Mr. Gallagher, manager of Gillis Aviation, for many things such as advice, pilot arrangements, flight training and others.

However, the depositions reveal that flights were made by Dow, Inc. personnel in the aircraft involved with one Barovich as the pilot and Dow, Inc. paid only for his meals and his room, but not for his services as a pilot. No charge was ever made by Gillis Aviation for any of the flights of Barovich. The only charges received by Gillis were for the pilot who was teaching Dow how to fly and for log books, rather than for any charter flights.

In attempting to make arrangements for the flight from Billings to Eugene, which proved to be the fatal flight, Dow, Inc. representatives contacted various pilots who had previously flown them. They were advised that none of them could pilot the aircraft. One of these pilots, Barovich, was a college student, holder of a private license, who had worked as a flight line employee of Gillis Aviation. Dow representatives were told that Barovich could not fly them as a free-lance operator, and they would have to go through Gillis Aviation to get a pilot. Dow, the president of Dow, Inc., did ultimately contact Gallagher and requested that he, Gallagher, secure a pilot. Gallagher finally contacted Deichel.

Pilot Deichel was introduced by Gallagher to the Dow, Inc. representatives as a qualified pilot who, while awaiting a call to employment by Northwest Airlines, would take the trip to Eugene to earn some extra money. Pilot Deichel made it clear to all that immediately upon Northwest's call, Dow, Inc. would be required to return him to Billings.

There was never any discussion with Gillis Aviation by any member of Dow, Inc. concerning any charges for the flight by Deichel. The only testimony concerning any arrangements for charges by Deichel came from Gallagher who stated that he introduced Deichel to Lowell and Dow and said, "You fellows make your own arrangements with Andy Deichel."

Lowell simply did not know what arrangements were made with pilot Deichel. Diane Dow, wife of the deceased president of Dow, Inc. and its then bookkeeper, did not know what arrangements were

made with Deichel, but she did know that on a previous occasion or occasions, Dow, Inc. had paid for pilots through Gillis Aviation.

The deceased, Heck, was an employee of Dow, Inc. accompanying his boss, Don Dow, and apparently never knew what arrangements had been made.

Plaintiff, appellant here, recognizes that there is no direct testimony of an agency, but insists that all inferences from facts of prior business transactions between Dow, Inc. and Gillis Aviation concerning aircraft, flight instruction, and procurement of pilots, together with the foregoing summary of how pilot Deichel was procured, supply circumstantial evidence sufficient to withstand a motion for summary judgment. Plaintiff would go even further in setting forth facts by referring to Gallagher's activities in checking weather information for the trip; making arrangements for an air search in Oregon after hearing that the aircraft was missing; volunteering free transportation of the bodies back from Oregon; and a statement by Gallagher to a Mr. Peterson after the accident---"Mr. Peterson, don't be concerned about liability. That is covered." All of these matters, mostly after the accident, plaintiff reasons are consistent with an ostensible agency and are, in the light most favorable to her, facts proving an ostensible agency.

However heretofore, we set out a brief summary of provisions pertaining to agency. There we noted that where the principal, intentionally or by want of ordinary care, causes or allows a third person to believe another to be his agent who is

not really employed by him raises a question of agency. Dow, Inc. is not a party. Everyone knew Dow, Inc. owned the aircraft. The deceased, Heck, has not been shown, in any manner, to have relied on pilot Deichel's supposed agency from Gillis Aviation. Heck here is the third person. There simply is no evidence to show whether or not he relied on, in any manner, an agency of Deichel. As previously noted, the burden of proving agency must be borne by the party who asserts it. Hamilton v. Lion Head Ski Lift, Inc., 139 Mont. 335, 363 P.2d 716.

Prior to the departure of the flight there is no evidence that Gallagher, representing Gillis Aviation, did anything to create a belief in the mind of Heck that pilot Deichel was Gillis Aviation's agent for that flight. As far as this record is concerned, there is no basis for the application of the rules of ostensible agency. Ostensible agency necessarily would be predicated upon an estoppel. The estoppel would arise against the principal for the benefit of the parties who have dealt with the principal prior to changing their position in reliance upon the representations by the principal. As stated heretofore, there simply is no evidence of any representation. Statements and actions by Gallagher after departure of the flight do not supply the evidence of ostensible agency. We are not concerned here with "ratification" because there was no representation by the principal nor any evidence of reliance by the third party, Heck. See Searle v. Great Northern Railway Company, 189 F.Supp. 423, for requirement of represenation or "holding out" by the alleged principal. Also see: Hartt v. Jahn, 59 Mont. 173, 182, 196 P. 153; Elkins v. Husky Oil Co., 153 Mont. 159, 455 P.2d 329.

- 8 -

To the foregoing discussion we add that to further develop factual testimony only amounts to an attempt to prove the negative. There was no actual agency relationship shown. There was no implied agency shown because there is no proof that pilot Deichel believed he had such agency authority. There is no proof of ostensible agency. Thus, there is no genuine issue of material fact and the summary judgment was properly granted under Rule 56(c), M.R.Civ. P.

Accordingly, the judgment is affirmed.

*Wesley Castles*
............................................
Associate Justice

We Concur:

*James T. Harrison*
............................................
Chief Justice

*Gene B. Daly*
............................................

*Frank I. Haswell*
............................................

*John Conway Harrison*
............................................
Associate Justices.