DONALD HAYNER *et al.*, Plaintiffs-Appellees, v. THERESA FOX *et al.*, Defendants-Appellees (Connecticut National Bank, f/k/a Hartford National Bank, *et al.*, Third–Party Plaintiffs-Appellees; Lash, Warner & Associates, Third–Party Defendant-Appellant).

First District (1st Division)   No. 1—87—3641

Opinion filed May 8, 1989.—Rehearing denied August 30, 1989.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Alvin R. Becker, Howard A. London, of counsel), for appellant.

Levenfeld, Eisenberg, Janger, Glassberg, Samotny & Halper, of Chicago, for appellees Connecticut National Bank and Bank of Ravenswood.

JUSTICE BUCKLEY delivered the opinion of the court:

Connecticut National Bank (Connecticut) and the Bank of Ravenswood (Ravenswood) brought this third-party action, arising from a judgment entered against them for accepting and paying a draft with forged indorsements, against Lash, Warner & Associates (Lash, Warner), a copayee and subsequent indorser of the forged instrument. The circuit court, on cross-summary judgment motions, entered judgment in favor of Connecticut/Ravenswood in the amount of $32,534. Lash, Warner appeals from these orders, contending that the circuit court erred in finding that it had created statutory warranties of good title and authenticity of prior indorsements pursuant to the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1987, ch. 26, pars. 3—417(1)(a), (2)(a), (2)(b)).

We reverse and remand this case to the circuit court with instructions to enter summary judgment in favor of Lash, Warner.

This controversy arose from a $32,534 insurance check issued to six payees in settlement of a fire damage claim for real estate. The sequence of the payee indorsements occurred as follows. The check was first indorsed by Pioneer Bank & Trust Company, which was the land trustee, and First Federal Savings & Loan to the order of Donald Hayner and Andrew Van Styn, the contract sellers. The contract purchaser, Theresa Fox, in possession of the check with the sig-

natures of the two banks and Hayner and Van Styn appearing on the check, then gave the check to Lash, Warner, the public adjustor who negotiated settlement. Lash, Warner indorsed the check in exchange for Fox' check for $4,706.25 as payment for its services as adjustor. The final payee indorsement was made by Fox when she presented the check for payment to Ravenswood, which, in turn, forwarded the check to Connecticut for final payment.

Hayner and Van Styn then brought an action against Fox, Pioneer Bank & Trust Company, Ravenswood, and Connecticut alleging that their indorsements had been forged and that Ravenswood and Connecticut had converted the check. Judgment was entered in favor of Hayner and Van Styn in the full amount of the check. Connecticut/Ravenswood[1] then filed this third-party complaint now on appeal against Lash, Warner, alleging that Lash, Warner had breached its warranties under the Code. Lash, Warner denied in its answer that it breached any warranties to Connecticut/Ravenswood, but it admitted in response to discovery that at the time it indorsed the check, Hayner's and Van Styn's indorsements appeared on the check. Lash, Warner also admitted that it had indorsed the check and returned it to Fox in exchange for payment for its services in the amount of $4,706.25.

The facts of this case being undisputed, we determine whether Lash, Warner created, as a matter of law, statutory warranties under the Code.

The Code's warranty provisions in issue here are section 3—417(1)'s warranty of good title and section 3—417(2)'s warranties of good title and that all prior signatures are genuine or authorized. The precise question presented for our review is whether these warranties are triggered where a payee indorses a check in exchange for a co-payee's payment for services rendered, such indorsement being made after the forged signature of another payee but before all necessary signatures appear on the check. As the parties have conceded in oral argument that no Illinois cases have addressed the effect of these warranties on this factual scenario and as we have not found any cases from other jurisdictions addressing this situation, we look to the language of the Code and the drafters' intent to reach our determination of this question.

■ The "presentment" warranty in section 3—417(1)(a) provides:

"Any person who obtains payment or acceptance and any

---

[1]The $32,534 judgment was paid by Ravenswood, which had admitted its liability to Connecticut on its presentment warranty.

prior transferor warrants to a person who in good faith pays or accepts that

(a) he has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title." (Ill. Rev. Stat. 1987, ch. 26, par. 3—417(1)(a).)

Under this provision, a person who gives his signature in exchange for payment under section 3—417(1) warrants that "he has a good title to the instrument." In the absence of a Code definition for the term "good title," evidence of the drafters' intent as to this term, or the parties' citation to any authority to the contrary, we rely on the plain meaning of the above phrase in concluding that section 3—417(1) applies to one who presents an instrument as one who purports to have and transfer title of the instrument by his indorsement. Lash, Warner could not have been purporting to have title to the check at the time it indorsed the check because a payee's signature was missing at the time.[2] Thus, we hold that Lash, Warner's indorsement did not create the section 3—417(1) presentment warranty of good title.

■ Turning to the "transfer" warranties, sections 3—417(2)(a), and (2)(b) provide, in relevant part:

"Any person who transfers an instrument and receives consideration warrants to his transferee and if the transfer is by indorsement to any subsequent holder who takes the instrument in good faith that

(a) he has a good title to the instrument ***

(b) all signatures are genuine or authorized." (Ill. Rev. Stat. 1987, ch. 26, pars. 3—417(2)(a), (2)(b).)

Lash, Warner contends that the events concluding in its signature did not trigger the "transfer" warranties because there was no "transfer of an instrument." It argues instead that its signature was merely a relinquishment of its rights in the instrument or an authorization to a copayee to negotiate the check. Connecticut/Ravenswood, on the other hand, argues that Lash, Warner transferred the check when it gave up all rights it had in the instrument.

The Code does not define "transfer of an instrument," nor do the drafters elucidate on the usage of the phrase. The parties, though, rely on different sections of the Code as indicating the drafters' in-

---

[2] 6 R. Anderson, Uniform Commercial Code §3—417:27 (3d ed. 1984) supports our conclusion in stating that "it can be readily concluded that 'good title' requires all indorsements necessary to plaintiff's chain of title be genuine and authorized." We may infer from this comment that the necessary indorsements must exist and the warranty does not come into play where a necessary indorsement is missing. Accord *First National Bank v. Nunn* (Mont. 1981), 628 P.2d 1110, 1115.

tent in this regard. We find none of these sections to be of much assistance.

Lash, Warner cites section 3—116(b), which states, in part, that "an instrument payable to the order of two or more persons *** may be negotiated *** only by all of them." (Ill. Rev. Stat. 1987, ch. 26, par. 3—116(b).) This section, however, was intended by the drafters not to define the warranty liability under section 3—417, but to clarify the distinction between an instrument payable to payees in the alternative and payable jointly as it relates to the negotiability of the instrument. Ill. Ann. Stat., ch. 26, par. 3—116, Uniform Commercial Code Comment, at 72 (Smith-Hurd 1963).

Connecticut/Ravenswood cites section 3—201, providing that a "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein" (Ill. Rev. Stat. 1987, ch. 26, par. 3—201), and this section's explicatory comment that the section "applies to any transfer, whether by a holder or not. Any person who transfers an instrument transfers whatever rights he has in it. The transferee acquires those rights even though they do not amount to 'title.' " (Ill. Ann. Stat., ch. 26, par. 3—201), Uniform Commercial Code Comment 1, at 95 (Smith-Hurd 1963).) While this section explains the effect of a transfer, it sheds no light on when there is a "transfer of an instrument." The Uniform Commercial Code Comment to the section on negotiation, section 3—202, so illustrates. In stating that negotiation is merely a special form of transfer, which importance lies entirely in the fact that it makes a transferee a holder, it states that "any negotiation carries a transfer of rights as provided in *** Section 3—201." Ill. Ann. Stat., ch. 26, par. 3—201, Uniform Commercial Code Comment 1, at 101 (Smith-Hurd 1963).

Connecticut/Ravenswood further cites section 3—118(e), which provides: "[u]nless the instrument otherwise specifies two or more persons who sign as maker, acceptor or drawer or indorser and as part of the same transaction are jointly and severally liable even though the instrument contains such words as 'I promise to pay.' " (Ill. Rev. Stat. 1987, ch. 26, par. 3—118(e).)[3] We find no merit to Con-

---

[3]Lash, Warner argues that Connecticut/Ravenswood is procedurally barred from relying on section 3—118(e) on appeal because it sued Lash, Warner for breach of warranty under section 3—417(2)(b) and it did not argue the "joint liability theory" under section 3—118(e) in its motion for summary judgment or in its response to Lash, Warner's motion for summary judgment. Connecticut/Ravenswood correctly points out, however, that its reliance on section 3—118(e) is not reliance on a new theory or substantive right; rather, section 3—118 is definitional. As the section's title explains, it is intended to clarify "Ambiguous Terms and Rules of Construction."

necticut/Ravenswood's contention that this section provides for several liability against each of the payee indorsers in the instant case even though each individual indorser is not conveying the entire instrument.

As its title explains, section 3—118 is intended to clarify ambiguous terms and rules of construction. The drafters clearly intended that this section clarify the contract liability of an indorser or coindorsers to pay if an instrument is dishonored, not define the warranty liability of indorsers. The Uniform Commercial Code Comment to section 3—118(e) states that this joint and several liability rule "applies only where such parties sign as part of the same transaction; successive indorsers are, of course, liable severally but not jointly." (Ill. Ann. Stat., ch. 26, par. 3—118(e), Commercial Code Comment 6, at 79 (Smith-Hurd 1963).) The comment's latter sentence demonstrates that section 3—118(e) does not address the successive indorsement situation and the warranty liability of such indorsers. The "same transaction" language obviously refers to the contract liability of coindorsers, rather than the warranty liability of successive indorsers. Moreover, as Lash, Warner urges, construing section 3—118(e) to apply to section 3—417 would be illogical because it would suggest that if a check is issued to multiple payees, the first payee to indorse could be liable for subsequent forgeries of other payees.

Before revealing the outcome of our search for other provisions in the Code, we need to expound on the parties' dispute in this case. Connecticut/Ravenswood argues that Lash, Warner confuses the concept of transfer with negotiation when it contends that its signature constituted merely a relinquishment of its rights as opposed to a transfer of an instrument. We understand this argument to be that the distinction between transfer and negotiation is that a transfer is the relinquishment of any interest in an instrument, whereas a negotiation conveys an entire instrument.

In our judgment, the Code provision relating to negotiation and the Uniform Commercial Code Comment suggest that the distinction between transfer and negotiation is not the quantum of the interest in the instrument that a person is purporting to convey but what rights the recipient acquires. The two reveal the correlation between the terms "transfer" and "negotiation." Uniform Commercial Code Comment 1 to section 3—202 states:

> "Negotiation is merely a special form of transfer, the importance of which lies entirely in the fact that it makes the transferee a holder ***." (Ill. Ann. Stat., ch. 26, par. 3—202, Uniform Commercial Code Comment 1, at 101 (Smith-Hurd 1963).)

Section 3—202(3) provides:

> "An indorsement is effective for negotiation only when it conveys the entire instrument ***. If it purports to be of less it operates only as a partial assignment." (Ill. Rev. Stat. 1987, ch. 26, par. 3—202(3).)

The Code comment demonstrates that a negotiation and transfer are not separate and distinct concepts; their dissimilarity lies only in what the recipient acquires. A negotiation confers upon the recipient the status of a holder,[4] whereas the recipient of a transfer may or may not acquire this status. Because the distinction in these two terms does not lie in the quantum of the instrument to be conveyed and because section 3—202(3) provides that to negotiate an instrument, an indorsement must convey the entire instrument, it follows that one must convey the entire instrument to "transfer an instrument." The drafters' use of the words "partial assignment" in section 3—202 instead of "transfer" to describe the effect of a conveyance of less than the entire instrument further supports this conclusion.

■ As a separate ground for holding that the "transfer" warranties are inapplicable to the instant case, we do not believe that the drafters could have intended the warranty provisions to apply to persons in the position of Lash, Warner. It is contrary to reasonable commercial expectations that in a multiple-payee situation, a payee could not give up his personal interest, however limited, to other copayees without warranting the title to the document or the genuineness of the signatures of other copayees who have previously signed the instrument. Contrary to Connecticut/Ravenswood's argument that the drafters contemplated this situation and provided the protection of "without recourse" to such copayees, an indorser who signs "without recourse" disclaims his contract liability, but with the exception of limiting the subsection (2)(d) warranty to one that the indorser has no knowledge of any defenses, such an indorser makes all of the other section 3—417 warranties. Ill. Ann. Stat., ch. 26, par. 3—417, Uniform Commercial Code Comment 9, at 320 (Smith-Hurd 1963); see *Wolfram v. Halloway* (1977), 46 Ill. App. 3d 1045, 1048, 361 N.E.2d 587, 589.

Accordingly, we find that Lash, Warner is not liable under the Code's warranty provisions because it did not "transfer an instrument" under section 3—417(2) or purport to convey good title under section 3—417(1)(a). Thus, we reverse the trial court's summary judg-

---

[4]Status of holder of a negotiable instrument is a prerequisite to qualifying as a holder in due course, which allows a person to take the instrument free from personal defenses. Ill. Rev. Stat. 1987, ch. 26, par. 3—305.

ment order in favor of Connecticut/Ravenswood and remand this case to the circuit court with directions to enter summary judgment in favor of Lash, Warner.

Reversed and remanded with directions.

CAMPBELL and O'CONNOR, JJ., concur.