No. 12860

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

BUTLER MANUFACTURING COMPANY,
a corporation,

Plaintiff and Appellant,

-vs-

J & L IMPLEMENT COMPANY, a PARTNERSHIP,

Defendants and Respondents.

---

Appeal from: District Court of the Fifteenth Judicial District,
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Loren J. O'Toole argued, Plentywood, Montana

For Respondents:

Habedank, Cumming & Best, Sidney, Montana
Otto Habedank argued, Sidney, Montana

---

Submitted: June 12, 1975

Decided: SEP 5 1975

Filed: SEP 5 1975

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by Butler Manufacturing Company, plaintiff, from a judgment entered following a jury verdict for J & L Implement Company, defendant, in the district court, Sheridan County.

The basic issue is whether an agency relationship, actual or ostensible, existed between Butler Manufacturing Company (hereinafter called Butler) and Jacobsen Construction Company, Inc. (hereinafter called Jacobsen) upon which J & L Implement Company, defendant, (hereinafter called J & L) could rely when returning unsold steel grain bins to the manufacturer, Butler, for credit.

J & L is a partnership in Plentywood, Montana, which sells farm equipment, steel buildings and granaries. Jacobsen was a distributor of steel buildings and granaries for Butler, the manufacturer. J & L ordered steel buildings and granaries through Jacobsen, receiving delivery from Jacobsen with billings and accountings coming directly from Butler, based on information supplied by Jacobsen.

Jacobsen had a chronic cash flow problem which led to its present insolvent, inactive state. Due to the unstable financial condition of Jacobsen, Butler's credit manager devised a unique sales arrangement whereby Butler directly billed Jacobsen's subdealers rather than selling to Jacobsen which would resell to the subdealers remitting payment to Butler from Jacobsen's account.

From 1969 through 1971, J & L sold approximately 45 bins under this arrangement, at all times dealing directly with Jacobsen and not Butler, except for billing and accounting purposes. In April 1970, J & L ordered 18 steel grain bins through Jacobsen, but due to drought conditions and the resulting bad crops that season, the bins did not sell. In March 1971, Jacobsen

- 2 -

picked up four of these bins pursuant to an understanding between Jacobsen and its subdealers. This understanding arose out of a sales meeting called by Jacobsen for all of its subdealers and attended by officers and agents of Butler, at Jacobsen's invitation. There was no objection to this understanding voiced by the officers and agents of Butler attending that meeting. This understanding had been put into force between Jacobsen and a subdealer at least one other time in Montana.

The arrangement for returning the first four bins was made during a meeting in Plentywood attended by the president and general manager of Jacobsen and a sales representative of Butler. Jacobsen issued a check to Butler upon picking up the four bins, and Butler credited J & L's account reflecting the cost of the returned bins.

On July 9, 1971, Jacobsen picked up the remaining fourteen bins, but did not issue a check to Butler reflecting payment for the bins, as it had done subsequent to the return of the first four bins. Jacobsen did not issue a check due to an agreement among Jacobsen, Butler, and Jacobsen's bank whereby, due to Jacobsen's unstable financial condition, all of Jacobsen's assets and cash in that bank would be applied to Jacobsen's account with Butler. J & L's account with Butler was not credited for the return of these fourteen bins.

On July 13, 1971, D. R. Bain, Butler's credit manager, called J & L concerning the return of the unsold bins. During this telephone conversation, Bain stated Butler's position that J & L was responsible for the payment of the bins, notwithstanding the physical return of the bins to Jacobsen. On July 14, 1971, Bain sent a letter to J & L again stating Butler's position that J & L was responsible for payment on the bins.

- 3 -

J & L informed Butler it had no obligation to pay for the bins, because they had been returned to Jacobsen pursuant to the understanding.

Butler filed this action in the district court seeking a judgment in the amount of $10,557.42, which was the balance of J & L's account. The jury returned a unanimous verdict in favor of J & L. Butler appeals from the judgment.

The issues raised in this appeal are:

(1) Was Jacobsen the ostensible agent of Butler with apparent authority to accept the return of the steel grain bins and credit the account of J & L for their return?

(2) If Jacobsen was the ostensible agent of Butler, did Butler disavow the acts of its agent within a reasonable length of time thereby terminating the apparent authority of the ostensible agent?

We find ample evidence on the record to establish the agency.

2A C.J.S. § 4(a), page 551, defines agency as:

" * * * the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

Montana's pertinent agency statutes are found in Title 2, Chapter 1, R.C.M. 1947.

Section 2-101, states:

"An agent is one who represents another, called the principal, in dealings with third persons. * * *"

Section 2-104 provides there are two distinct types of agency, actual or ostensible.

Section 2-105 provides an agency is actual when:

" * * * the agent is really employed by the principal."

Section 2-106 provides an ostensible agency is present when:

" * * * the principal intentionally, or by want of ordinary care, causes a third person to believe

- 4 -

another to be his agent who is not really employed by him."

Section 2-122 states the measure of an agent's authority is:

" * * * such authority as the principal actually or ostensibly confers upon him."

Section 2-123 provides:

"Actual authority is such as the principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess."

Section 2-124, provides:

"Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

This Court stated the rule on agency in Freeman v. Withers, 104 Mont. 166, 172, 65 P.2d 601:

"An agency may be either actual or ostensible. * * * [section 2-104, R.C.M., 1947.] It may be created by a precedent authorization, or a subsequent ratification. * * * [section 2-114, R.C.M. 1947.] It may be implied from conduct and from all the facts and circumstances in the case (2 C.J.S. p. 1043) and may be shown by circumstantial evidence. (Doney v. Ellison, 103 Mont. 591, 64 P.2d 348.) Also, ratification may be implied from the acts and conduct of the alleged principal."

This rule was affirmed in Hamilton v. Lion Head Ski Lift, Inc., 139 Mont. 335, 340, 363 P.2d 716.

The record indicates from 1969 through 1971 J & L dealt with Jacobsen as a Butler Agri-Builder. J & L placed orders for Butler products through Jacobsen and received delivery from Jacobsen. Butler did bill J & L directly, but gave no indication that Jacobsen was not acting in an agency capacity. At the spring sales meeting held by Jacobsen for its subdealers, officers and agents of Butler were in attendance, including the president of Butler. When Jacobsen's president and general manager went to Plentywood on a collection visit, he was accompanied by a sales representative of Butler (it was during this

- 5 -

March 1971 meeting that agreement was reached on the return of the first four bins). All these facts might lead a reasonable man to believe Jacobsen was an agent of Butler.

Pursuant to the understanding presented by Jacobsen's president and general manager at the spring sales meeting, at least two other subdealers of Jacobsen had returned unsold bins to Jacobsen without an adverse comment from Butler. J & L returned four bins to Jacobsen in March 1971, and had its account with Butler credited, again without adverse comment from Butler.

The Supreme Court of Wyoming in Ulen v. Knecttle, 50 Wyo. 94, 103, 58 P.2d 446, 111 A.L.R. 565, quoted in Hamilton, sets forth the rule of evidence for implied or ostensible authority:

> " * * * Implied authority may, and in fact must, be shown by the course of dealing of the parties and other circumstances in the case."

The course of dealing between the subdealers (including J & L) and Jacobsen, without denial of authority on the part of Butler prior to July, 1971, presented sufficient evidence of ostensible agency and authority in Jacobsen to support the verdict of the jury.

The Montana statute, section 2-205, R.C.M. 1947, states :

> "A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without ordinary negligence, incurred a liability or parted with value upon the faith thereof."

The principal may repudiate the actions of his ostensible agent by prompt notice to the third party who is relying on the ostensible agency and authority. This Court in McLaren Gold Mines Co. v. Morton, 124 Mont. 382, 396, 224 P.2d 975, said:

> "It is settled that a principal who neglects promptly to disavow an act of his agent, by

- 6 -

> which the latter has transcended his author-
> ity, makes the act his own; he is bound to dis-
> avow it the first moment the fact comes to his
> knowledge."

In 2A C.J.S. Agency § 89, p. 694, this rule is set out:

> "The principal does not ratify an unauthorized
> act if he repudiates it with reasonable promptness
> after learning the facts * * *".

Here, Butler asserts that it repudiated the ostensible agency and authority of Jacobsen promptly upon learning the facts. To support this assertion, Butler refers to the July 13, 1971, telephone call to J & L in which it was stated that J & L was responsible for payment of the returned bins. This call was followed by a letter dated July 14, 1971, from Butler's credit manager to J & L reasserting Butler's position stated in the telephone call of July 13, 1971.

Sufficient evidence appears in the record to permit the jury to conclude Butler had knowledge of the bin return understanding between Jacobsen and the subdealers and that bins were actually returned pursuant to the understanding, with the subdealers' accounts with Butler being credited. The record contains facts which would indicate that Butler had such knowledge as early as 1970, without repudiation or disavowal on the part of Butler.

On appeal, Butler objects to the refusal of the district court to give plaintiff's proposed instructions numbers 12 and 14.

Plaintiff's proposed instruction number 12 reads:

> "You are instructed that the agent is not author-
> ized from ostensible authority to collect or
> receive payment to assume the debt from the third
> person to the principal, and such assumption,
> unless ratified, does not constitute payment. Thus,
> if, instead of paying money, the debtor writes off
> a debt due to him from the agent, such a trans-
> action is not payment as against the principal,
> who is not a party to the agreement, though it may
> have been agreed to by the agent."

- 7 -

Butler cites Lindsey v. Keenan, Andrews & Allard, 118 Mont. 312, 317, 165 P.2d 804, (quoting from 2 Am.Jur. § 165, p. 133) as the basis for proposed instruction number 12:

> "'The general rule is that in the absence of express authority or custom to the contrary, the power of an agent authorized to collect or receive payment is limited to receiving that which the law declares to be legal tender, or which is by common consent considered and treated as money, and passes as such at par. This is in accordance with the general principle that authority to receive payment implies only an authority to receive the thing due to an obligation, and not an authority to commute for any other thing'".

The general rule for determining the scope and extent of ostensible authority is set forth in 2A C.J.S. Agency § 159, p. 795:

> "The scope of the apparent or ostensible authority of an agent is to be gathered from all the facts and circumstances surrounding the transaction. [Citing Campbell v. Oriental Trading Co., 58 Mont. 520, 193 P. 1112.] The considerations which fix and determine it are the same as those applicable to the determination of whether an apparent agency, or agency by estoppel exists * * *. The authority arises, when it does arise, from the facts of the particular case. The test is found in a determination of the exact extent to which the principal held the agent out or permitted him to hold himself out as authorized, and what a prudent person, acting in good faith, under the circumstances would reasonably believe the authority to be."

The proposed instruction would have led to possible confusion on the part of the jury.

> Plaintiff's proposed instruction number 14 reads:
>
> "If you should find that Jacobsen Construction Co. was the ostensible agent of the Plaintiff, Butler Manufacturing Company, and thus authorized to accept the return of the bins and credit the account of J & L Implement Company, you must also examine the facts and determine if Butler Manufacturing disavowed the act of its agent, Jacobsen Construction Company, within a reasonable length of time.
>
> "If you determine that Butler Manufacturing Company notified the defendant, J & L Implement Company, within a reasonable length of time that they would not be bound by the acts and representations made by Jacobsen Construction Company, the act of Jacobsen Construction Company cannot bind Butler Manufacturing Company to credit the account of

- 8 -

J & L Implement Company."

Instruction number 12 given by the district court adequately covered the issue of disavowal by Butler. Instruction number 12 reads:

> "It is settled that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own; he is bound to disavow it the first moment the fact comes to his knowledge."

The district court's instruction number 12 is less confusing to the jury and sets forth the disavowal rule as stated in McLaren Gold Mines Co.

This Court held in Wollan v. Lord, 142 Mont. 498, 504, 385 P.2d 102, that:

> "A trial judge will not be held in error for refusing to give instructions where the subject has been adequately covered by other instructions, Carter v. Miller, 140 Mont. 426, 372 P.2d 421; Franck v. Hudson, 140 Mont. 480, 373 P.2d 951; Holland Furnace Co. v. Rounds, 139 Mont. 75, 360 P.2d 412; or where it is not applicable to the pleadings and the evidence. Malano v. Bressan, 76 Mont. 366, 245 P. 871; Schumacher v. Murray Hospital, 58 Mont. 447, 193 P. 397; Townsend v. City of Butte, 41 Mont. 410, 109 P. 969."

Butler asserts the district court was in error in not granting a directed verdict at the end of the presentation of evidence. This assertion is based on Butler's contention that the disavowal of Jacobsen's ostensible agency was within a reasonable time after gaining knowledge of the facts.

This Court in Mueller v. Svejkovsky, 153 Mont. 416, 420, 458 P.2d 265 held:

> "On an appeal from a motion denying a directed verdict there are three rules which apply. (1) The evidence introduced by the plaintiff will be considered in the light most favorable to him. (2) The conclusion sought to be drawn from the facts must follow as a matter of law. (3) Only the evidence of the plaintiff will be considered."

See also: Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57; Pushard v. J. C. Penney Co., 151 Mont. 82, 438 P.2d 928; Solich v. Hale,

- 9 -

150 Mont. 358, 435 P.2d 883; Gerard v. Sanner, 110 Mont. 71, 103 P.2d 314.

Here, viewing the evidence in the light most favorable to the plaintiff, the conclusions sought to be drawn from the facts do not follow as a matter of law. As stated in Freeman "ratification may be implied from the acts and conduct of the alleged principal." (104 Mont. 166, 172)  The evidence presented by Butler did not, on its face, repudiate the ostensible agency and authority as a matter of law; the promptness of the disavowal remained an open question of fact.

In Estate of Dillenberg, 136 Mont. 542, 545, 349 P.2d 573, this Court held:

> " * * * if there be in the record substantial evidence sustaining the finding [of the jury] we must sustain the court's action in submitting the cause to the jury and sustain the finding of the jury and the judgment based thereon."

The motion for a directed verdict was not improperly denied.

The judgment is affirmed.

--------------------------------
Chief Justice

We concur:

Justices

- 10 -