No. 80-467

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

FIRST NATIONAL BANK IN MILES CITY,

Plaintiff and Respondent,

vs.

GLADYS NUNN,

Defendant and Appellant.

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Custer.
Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Nye Law Firm, Billings, Montana
Jerrold L. Nye argued, Billings, Montana

For Respondent:

Lucas and Monaghan, Miles City, Montana
Thomas Monaghan argued, Miles City, Montana

Submitted: April 23, 1981

Decided JUN 2 1981

Filed: JUN 2 1981

_Thomas J. Kearney_

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The First National Bank in Miles City initiated this action in the Sixteenth Judicial District Court, Custer County, to recover the amount of a check deposited by its customer, Gladys Nunn. The check had been returned to First National through the collection chain because of an improper endorsement. First National alleged in its complaint that Gladys Nunn had breached her warranty under the Uniform Commercial Code, section 30-4-207, MCA, and was therefore required to reimburse the bank for the amount of the check. Gladys Nunn filed a counterclaim for damages for libel and slander, mental anguish, costs and attorney fees. After discovery, both parties moved for summary judgment. Gladys Nunn appeals from the order granting summary judgment in favor of First National on both the complaint and the counterclaim. We affirm the judgment on the counterclaim, reverse the judgment on the complaint and remand for entry of judgment in favor of Gladys Nunn on the complaint.

In October of 1979, Gladys Nunn moved to Miles City to live with her former husband, Paul Nunn, who was employed by Continental-Keil, Inc. On October 18, 1979, Gladys Nunn opened a checking account at the First National Bank in Miles City. Two of Paul Nunn's paychecks, properly endorsed by him, were used to open Gladys Nunn's account. Only Gladys Nunn was authorized to draw on this account.

On a monthly basis thereafter, Gladys Nunn deposited Paul Nunn's paychecks from Continental-Keil into her checking account. She would then use the funds to pay the living expenses and bills of the household which consisted of herself, Paul Nunn, and a minor child of Paul Nunn from a previous marriage.

On April 2, 1980, Gladys Nunn deposited into her checking account Continental-Keil's check No. 33326 dated March 29, 1980, in the amount of $1,364.33. The check was made payable to Paul Nunn. On the back of the check, Gladys Nunn wrote "for deposit

- 2 -

only." Paul Nunn had not endorsed the check, nor had Gladys Nunn signed his name or her name. The bank's employee accepted the check and the deposit ticket. After Gladys Nunn left the bank, the employee stamped the following words on the back of the check:

DEPOSITED TO THE CREDIT OF

FIRST NATIONAL BANK
MILES CITY, MONTANA

The employee wrote the name of Paul Nunn on the line. Additionally the bank stamped its guarantee of prior endorsements. The check was credited to Gladys Nunn's account and forwarded through the usual banking channels for collection.

Gladys Nunn testified in her deposition that she had picked up the check at the post office box which she and Paul Nunn owned. She stated that she talked to Paul Nunn on the telephone on Monday evening, March 31, 1980, and that he told her to sign the check, deposit it and pay the bills. When Paul Nunn returned home on Wednesday, April 2, he asked Gladys for $250, which she gave to him in the form of a check drawn on her account out of the paycheck funds. As a result of domestic difficulties Gladys Nunn moved out of the home in Miles City and returned to Livingston. When she left Miles City on April 8, she had withdrawn all of the proceeds from the Continental-Keil check by writing checks for household expenses and purchasing a money order payable to herself in the amount of $600.

Continental-Keil check No. 33326 was drawn on the corporation's account at Security Bank in Billings. Security Bank received the check from First Bank of Billings, the intermediate or clearing house bank in the collection chain, on or about April 3 and debited the account of Continental-Keil. On April 11, Security Bank sent a statement to Continental-Keil,

which included check No. 33326.

Jerry Wagner, the comptroller of Continental-Keil was contacted by Paul Nunn on or about April 12, 1980. Paul told Wagner that his ex-wife had received his paycheck and deposited it into her account and that his name had been forged to the check. Wagner went to Security Bank on April 17 and completed a "forged endorsement document" and other necessary papers to have the check returned to the First National Bank. Subsequently Jerry Wagner issued a new check to Paul Nunn in replacement of check No. 33326. Paul Nunn has never been available for testimony because in early May, 1980, he allegedly embezzled considerable funds from his employer and disappeared.

Security Bank returned check No. 33326 to First Bank of Billings, which in turn returned the check to First National Bank. Security Bank credited the account of Continental-Keil and received credit from First Bank. First Bank was reimbursed by First National Bank for the $1,364.33. First National Bank researched Gladys Nunn's checking account and found it to have insufficient funds to cover the returned check. On April 24, 1980, Paul Mottram of First National Bank contacted Gladys Nunn and notified her of the fact that the check had been returned due to an improper endorsement. The First National Bank demanded that Gladys Nunn refund the amount of the check, which she refused to do.

The First National Bank filed its complaint against Gladys Nunn on June 10, 1980, alleging that Gladys Nunn breached her warranty under section 30-4-207, MCA, and that she was therefore liable for the $1,364.33. Gladys Nunn filed a counterclaim for damages for libel and slander in the amount of $15,000; for mental anguish, suffering and damage in the amount of $5,000; and for her specific expenses, costs and attorney fees for defending First National Bank's action.

The issue presented for determination is whether the

District Court erred in granting summary judgment to First National Bank on the complaint and counterclaim. In its conclusions of law, the District Court found that Gladys Nunn breached her warranty as a customer under section 30-4-207, MCA, and that under section 30-4-212, MCA, First National Bank was entitled to a refund from her in the amount of $1,364.33, plus interest. The court further found that Continental-Keil returned the check within the time specified in section 30-4-406, MCA, after learning of the improper endorsement, that First National Bank gave timely notice to Gladys Nunn of the return of the check and made timely demand upon her for a refund, that First National Bank made a provisional settlement with Gladys Nunn on the date of the deposit, and that the settlement never became final. For the following reasons we find that the District Court erred in its interpretation of the Uniform Commercial Code as it applies to this case.

The First National Bank is both a depositary and a collecting bank under the definitions of section 30-4-105(a) and (d). Gladys Nunn was a customer of First National Bank as defined in section 30-4-104(e). Section 30-4-212, MCA, provides for the right of charge-back or refund from the customer as follows:

> "(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (subsection (3) of 30-4-211 and subsections (2) and (3) of 30-4-213)." (Emphasis added.)

By crediting Gladys Nunn's account with the amount of the Continental-Keil check, First National Bank made a "provisional

settlement" with her. The bank had the right to automatically revoke that settlement up to such time as the settlement became final. The question becomes whether the settlement ever became final. The District Court found that the settlement did not become final. We conclude that the settlement became final.

Section 30-4-213(2), MCA, provides that a provisional settlement becomes final upon the occurrence of "final payment" of the item by the payor bank. Final payment is defined by section 30-4-213(1), MCA, as follows:

> "(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:
>
> "(a)   paid the item in cash; or
>
> "(b)   settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearinghouse rule or agreement; or
>
> "(c)   completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
>
> "(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearinghouse rule or agreement. Upon a final payment under subparagraphs (b), (c), or (d) the payor bank shall be accountable for the amount of the item."
> (Emphasis added.)

If Security Bank (the payor bank) completed the process of posting the check to Continental-Keil's (the drawer's) account, then the provisional settlements in the collection chain became final, including the settlement made by First National Bank with Gladys Nunn. The process of posting includes the following steps taken by the bank, according to section 30-4-109, MCA:

> "(a)   verification of any signature;
>
> "(b)   ascertaining that sufficient funds are available;
>
> "(c)   affixing a 'paid' or other stamp;
>
> "(d)   entering a charge or entry to a customer's account;
>
> "(e)   correcting or reversing an entry or erroneous action with respect to the item."

Gary M. Johnson of Security Bank testified in his deposition that check No. 33326 was received by his bank from the First Bank of Billings (an intermediary bank in the collection chain) on or about April 3, 1980, and posted to Continental-Keil's account on that same date. Continental-Keil's account was debited in the amount of $1,364.33.

Continental-Keil returned the check to Security Bank on April 17, 1980, claiming a forged or improper endorsement of the payee's signature. This return of the check to Security and the subsequent recrediting of Continental-Keil's account occurred after the process of posting had been completed and therefore after the settlements extended on the item became final.

Respondent argues that the provisional settlements do not become final until the drawer has had time to examine his bank statement, relying on section 30-4-406, MCA. That statute concerns the customer's duty to discover and report unauthorized signatures within a reasonable time after receiving his statement. If the customer fails to timely report a forgery he is precluded from recovering from his bank. Although section 30-4-109(e), MCA, states that posting is not completed until the bank has "correct[ed] or revers[ed] an entry or erroneous action with respect to the item," that subsection cannot be construed to allow unlimited time for the customer to examine his statement and report a forgery. The purpose of subsection (e) was to allow time for a bank employee to examine items after the computer automatically debited the customer's account and to make a final decision with respect to the item. See Final Payment and the Process of Posting under the Uniform Commercial Code, 68 Colum. L. Rev. 349 (1968).

Since Continental-Keil did not return the check until after final settlement, Security Bank no longer had the right to revoke the settlement given to First National Bank, through the collection chain, under the provisional settlement doctrine.

Also, First National Bank no longer had the right of charge-back to its customer's account or the right to obtain refund from its customer, Gladys Nunn, under section 30-4-212, MCA. The District Court's conclusion that First National was entitled to a refund under section 30-4-212, MCA, was erroneous.

The conclusion that the settlements in the collection chain became final does not resolve this case, however. The loss of the right to charge-back or refund under section 30-4-212, MCA, does not preclude First National Bank from seeking to hold its customer liable for breach of her warranty pursuant to section 30-4-207. Section 30-4-212(5), MCA; Sunshine v. Bankers Trust Co. (1974), 34 N.Y.2d 404, 358 N.Y.S.2d 113, 314 N.E.2d 860.

According to section 30-4-207(2), MCA, each customer who transfers an item to a collecting bank warrants to the collecting bank that:

> "(a)  he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and
>
> "(b)  all signatures are genuine or authorized; and
>
> "(c)  the item has not been materially altered; and
>
> "(d)  no defense of any party is good against him; and
>
> "(e)  he has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted item. In addition each customer and collecting bank so transferring an item and receiving a settlement or other consideration engages that upon dishonor and any necessary notice of dishonor and protest he will take up the item."

The District Court found that as a customer of First National Bank, Gladys Nunn gave the warranties of subsection (a) above, and that she breached these warranties. Appellant argues that she did not breach the warranty of good title or authority because she was given the authority to obtain payment of the check by Paul Nunn. None of the other warranties or provisions in subsections (b) through (e) apply to this case.

The first warranty is that the customer has good title to the item. It is certain that if the payee's endorsement were forged, the forger would not have good title. That is not the situation here. According to Anderson, Uniform Commercial Code, Vol. 3 § 3-417: 8 (2nd Edition), good title requires that all necessary endorsements be genuine and authorized. It can be inferred from this comment that the necessary endorsements must exist, and in this case where the payee's endorsement is missing, Gladys Nunn did not have good title. Gladys Nunn did not breach her warranty, however, if she had authority to obtain payment on behalf of one who did have good title, i.e. on behalf of Paul Nunn. According to Anderson, supra, § 3-417: 1.8, the second warranty of subsection (a) is meant to cover the case of an agent who transfers for another. The facts of this case show the existence of an agency relationship between Paul and Gladys Nunn. Gladys opened her account with Paul's paychecks, properly endorsed by him. Subsequently there were at least four deposits by Gladys of Paul's paychecks, properly endorsed by him. All of these funds were used to pay the household expenses of Paul and Gladys. This prior conduct is strong evidence that Gladys was an agent of Paul's for the purpose of depositing his checks.

In addition, Gladys testified in her deposition that she talked to Paul on the telephone with regard to check No. 33326, that he told her to sign the check, deposit it and pay the bills. She thought she had signed the check. If she had signed Paul's name, this would have been permissible under section 30-3-403, MCA. Further, when Paul came home on the evening of April 2, 1980, he asked Gladys if she had deposited the check and paid the bills. He asked how much money was left, and then asked her for $250. Paul received a check from Gladys for $250 out of the proceeds of his paycheck. He also received benefit in the form of payment of the household bills. Gladys also testified that he received another $200 in cash from the proceeds of his paycheck.

About a week later, Paul went to his employer and alleged that his paycheck had been stolen and his signature forged.

The UCC provides that agency law applies unless displaced by Code provisions. Section 30-1-103, MCA. Agency principles are used in section 30-3-403, MCA, regarding signatures made by agents. Where there is no signature of the principal or of the agent, agency law may nonetheless be applied to establish the authority referred to in section 30-4-207(2)(a), MCA. It is well-settled that a principal who accepts the benefits of an agency transaction cannot later deny there was an agency. Purcell v. Gibbs (1958), 133 Mont. 481, 326 P.2d 679; Arnold v. Genzberger (1934), 96 Mont. 358, 31 P.2d 296; New Home Sewing Machine Co. v. Songer (1931), 91 Mont. 127, 7 P.2d 238. Even if the agent's actions were unauthorized, the principal ratifies them by receiving the benefits and is estopped to deny the agency. Arnold v. Genzberger, supra.

We find that Gladys Nunn had the requisite authority to obtain payment of the check on behalf of Paul Nunn and that she was not in breach of her warranty under section 30-4-207(2)(a), MCA. Consequently First National Bank cannot recover from Gladys Nunn. The bank's remedy, if any, is against Continental-Keil or Paul Nunn.

With respect to the counterclaim made by Gladys Nunn, we find that the District Court was correct in granting summary judgment for First National Bank. Where the record shows no genuine issue of material fact, the party opposing the motion for summary judgment has the burden of coming forward with substantial evidence raising the issue. Rule 56(c) and (e), M.R.Civ.P.; Van Uden v. Hendricksen (1980), ____Mont.____, 615 P.2d 220, 37 St.Rep. 1431; Riis v. Day (1980), ____Mont.____, 613 P.2d 696, 37 St.Rep. 1093; Downs v. Smyk (1979), ____Mont.____, 604 P.2d 307, 36 St.Rep. 2300.

Here, the record shows no genuine issue of material fact,

Gladys Nunn did not produce evidence raising such issue, and the record does not support her claim for damages. First National Bank was entitled to judgment on the counterclaim as a matter of law.

Attorney fees are recoverable by the prevailing party only where expressly authorized by statute or by agreement by the parties. Stalcup v. Montana Trailer Sales (1965), 146 Mont. 494, 409 P.2d 542, and cases cited therein. Since there is no statute or agreement providing for an award of attorney fees in this case, there is no basis for such an award.

The judgment of the District Court on the counterclaim is affirmed, the judgment on the complaint is reversed, and the case is remanded for entry of summary judgment in favor of Gladys Nunn on the complaint.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 11 -