No.  96-526

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


YOUDERIAN CONSTRUCTION, INC.,

Plaintiff, Respondent and
Cross-Appellant,

v.

DAVID and PATRICIA
HALL,

Defendants and Appellants.


APPEAL FROM:        District Court of the Tenth Judicial District,
In and for the County of Judith Basin,
The Honorable John R. Christensen, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Louis D. Nybo, Jeffrey T. McAllister, Conklin, Nybo, Leveque &
Murphy, Great Falls, Montana

For Respondent:

A. Clifford Edwards, Roger W. Frickle, Edwards Law Firm,
Billings,
Montana


Submitted on Briefs: March 13, 1997

Decided: October 7, 1997
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.


Youderian Construction, Inc. (Youderian) filed this action to recover for work and materials it provided in the process of constructing a cabin for David and Patricia Hall (the Halls or David).  Following a bench trial, the District Court for the Tenth Judicial District, Judith Basin County, allowed Youderian to recover some of the charges claimed. The court denied Youderian's request for attorney fees.  From this judgment, the Halls appeal and Youderian cross-appeals.  We affirm.

The issues on appeal, as framed by this Court, are:

1.  Whether there is substantial evidence in the record to support a finding of ostensible agency determining that John Hill (John) had authority, acting as the ostensible agent on behalf of the Halls, to hire Youderian to complete the road improvement project.

2.  Whether there is substantial evidence in the record to support the finding that those claiming the agency (Youderian) acted reasonably.

3. Whether, as a matter of law, the ostensible agency was created.

4.  Whether the District Court erred in concluding that the Halls are estopped to deny John's ostensible authority.

The issues on cross-appeal are:

5.  Whether the District Court erred in determining that John did not have ostensible authority as agent for the Halls to hire Youderian to complete the water system, sewer system and related landscaping project.

6.  Whether the District Court erred in denying Youderian's request for attorney fees.

Factual and Procedural Background

The Halls leased land in Judith Basin County from John and Lois Hill  for the purpose of constructing a cabin.  The Halls hired George Klind (Klind), Lois Hill's brother, to build the cabin.  The original plan for the cabin called for it to be very rustic without indoor plumbing.  However, the Halls eventually changed their minds in this regard and a sketch of the floor plan of the cabin faxed to the Halls by Klind on July 6, 1994, showed the existence of a bathroom.

On August 13, 1994, Klind and the Halls entered into a written contract regarding the construction of the cabin.  The contract was silent regarding any particulars of the

construction of the cabin except for its size.  Klind estimated the cost of construction at $60,000.  This estimate was included in the contract.

Youderian was hired to perform work on the cabin which entailed laying the footings, putting up the logs, laying a water line and septic system, and landscaping portions of the property.  Almost a year prior to the construction of the cabin, Youderian performed other work for John, David, and David's partner, Bill Egbert, at another site.  The purpose of that project was for the construction of a lodge.  The cost of this work was split in half with David and Bill Egbert paying one half and John paying the other half.  The lodge project was never completed.

Upon a visit to the cabin building site, David realized that the road was merely an unimproved dirt trail that was not accessible when it was wet or covered with snow.  Consequently, David discussed the condition of the road with John.  There is some dispute as to when this discussion took place and what it entailed.  David contends that he merely explained the situation to John and asked his permission to improve the road since it was on  John's land.  John states that he believed David was instructing him to hire someone to improve the road.  Whatever the case, John hired Youderian who completed the road improvements over a seven to eight day period in September 1994.

Youderian billed Klind for all of the work Youderian performed on the cabin.  While Klind paid Youderian for laying the footings and putting up the logs, Klind did not pay for the water line, the septic system, the landscaping, or for the improvements to the road.  Youderian had not filed a construction lien on the project.  Hence, Youderian billed the Halls directly claiming that since the Halls received the benefit of Youderian's services, they were ultimately responsible for payment.  Although, the contract between the Halls and Klind estimated the cost of the project at $60,000, the Halls had sent Klind more than $115,000.  Thus, the Halls refused to pay claiming that they had already paid Klind for the work and that it was Klind that owed Youderian.

Youderian filed a complaint against the Halls on April 11, 1995, and an amended complaint on November 30, 1995, alleging that Youderian performed and completed contracting services on real estate leased by the Halls and that Youderian had not received payment for these services.  Youderian sought to recover from the Halls $17,651.68, the amount of Youderian's services, along with Youderian's attorney fees for prosecuting this case.

A bench trial was conducted on May 30, 1996. On July 18, 1996, the District Court issued its Findings of Fact, Conclusions of Law and Judgment wherein it determined that all of the items claimed against the Halls by Youderian, with the exception of the road, were actually owed to Youderian by Klind. The court concluded that the road should be paid for by the Halls because John was the ostensible agent of the Halls and had ostensible authority to bind Halls regarding the road. Thus, the court granted judgment against the Halls in the amount of $8,567.00 for the road improvements. The District Court denied Youderian's claims for the water system, septic system and the landscaping as well as Youderian's request for attorney fees. Both Youderian and the Halls appeal the District Court's judgment and order.

## Standard of Review

The standard of review of a district court's findings of fact is whether they are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906 (citing Columbia Grain Intern. v. Cereck (1993), 258 Mont. 414, 417, 852 P.2d 676, 678).

In Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285, we adopted the following three-part test to determine whether the district court's findings are clearly erroneous. First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence, the Court will determine if the trial court misapprehended the effect of the evidence. Third, if the findings are supported by substantial evidence and that evidence has not been misapprehended, this Court may still hold that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. DeSaye, 820 P.2d at 1287.

"Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a scintilla of evidence and may be less than a preponderance of evidence." Jones v. Arnold (1995), 272 Mont. 317, 323, 900 P.2d 917, 921 (citing Yellowstone Basin Properties v. Burgess (1992), 255 Mont. 341, 346, 843 P.2d 341, 344).

The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04).

## Issue 1.

Whether there is substantial evidence in the record to support a finding

of ostensible agency determining that John had authority, acting as the ostensible agent on behalf of the Halls, to hire Youderian to complete the road improvement project.

The District Court found that John had ostensible authority acting at the Halls' request to hire Youderian to complete the road improvement project which principally benefitted the Halls. The court further found that the cost of the road improvements was not calculated into the contract executed between Klind and the Halls as the contract makes no mention of additional costs for road improvements over and above Klind's original construction estimate. Therefore, the court decreed that the Halls are individually liable for the costs of the road improvements.

The Halls contend that they did not direct John to hire anyone to improve the road. They assert that the conversation between David and John was nothing more than the recital of a need for a road and not a direction to have a road built. The Halls also contend that no agency relationship existed as there was no contract between themselves, the supposed principal, and John, the supposed agent.

Both the agency and the agent's authority may be ostensible. An ostensible agency is created when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent who is not really employed by him. Section 28-10-103, MCA; Turjan v. Valley View Estates (1995), 272 Mont. 386, 394, 901 P.2d 76, 81-82. The agency relationship may be implied from the conduct and from all the facts and circumstances in the case and it may be shown by circumstantial evidence. Butler Manufacturing. Co. v. J & L Implement Co. (1975), 167 Mont. 519, 524, 540 P.2d 962, 965.

Ostensible authority is that which a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess. Section 28-10-403, MCA; Northwest Polymeric v. Farmers State Bk. (1989), 236 Mont. 175, 177, 768 P.2d 873, 875. Ostensible authority can be implied from the words and conduct of the parties and the circumstances of the particular case notwithstanding a denial by the alleged principal. Audit Serv., Inc. v. Elmo Road Corp. (1978), 175 Mont. 533, 541, 575 P.2d 77, 81.

The Halls contend that statements made by an alleged agent to a third party cannot be testified to by the third party in order to prove the existence of an agency relationship. While this may rule out the testimony of representatives of Youderian, as the third party, regarding any agency relationship, it does not rule out the testimony of the alleged

agent.

This Court has previously stated that the direct testimony of an agent on the witness stand is admissible to prove the existence and the extent of his authority where his powers and duties have not been reduced to writing. Phelps v. Union Central Life Ins. Co. (1937), 105 Mont. 195, 199, 71 P.2d 887, 889.

To this end, John testified at trial that David instructed him to have the road improved:

Q.   . . . Could you tell us how you were involved in the improving of this road.

A.   [David] and I had been visiting about it, and he said that he needed a road, and I said something about, well, I will talk to Youderians, and he never said anything different, so I just thought that he wanted them to do it.

Q.   You knew the Youderians and their work before?

A.   Yes.

Q.   They had worked on your ranch many times?

A.   Yes.

Q.   And you found them to be honest and good contractors?

A.   Yes.

Q.   And you provided their name to Mr. Hall because he didn't know any contractors in this area, I assume.

A.   Yes.

Q.   And what was the--were you getting paid anything by Mr. Hall to get the Youderians involved and get this road upgraded?

A.   No.

Q.   It was a favor, right--

A.   Yes.

Q.   --and you weren't trying to get this road improved for yourself, were you--

A.   No.

Q.   --and you wouldn't have done it for yourself; would you?

A.   No.

Q.   It was done strictly and completely because Hall wanted an improved road to his cabin that he could use then all year around; correct?

A.   Yes.

Q.   And because of your suggestion did he tell you to go ahead and put the Youderians on the property?

A.   I don't remember whether he specifically said that or not, but--

Q.   But it was clear in your mind--

A.   That he wanted them to do it.

Q.   Yes, you had his authority to put Youderians to work?

A.   Yes.

Trial Transcript at 93-94.

Q.   Did Mr. Hall have you take care of the details of getting the local contractors, Youderian, on scene to build [the road]?

A.   That was my understanding.

```
Q.   And that's what you did?
          A.   Yes.
     Q.   You relied on that?
          A.   Yes.
Q.   And obviously the Youderians relied on you?
          A.   Yes.
Q.   Because for Mr. Hall they went out and built a road; correct?
          A.   Yes.
Q.   And were you satisfied they did what you asked them to do on
               behalf of Mr. Hall?
          A.   Yes.
                    . . .
Q.   But there was no question that you were the contact with the
     Youderians on behalf of Mr. Hall; is that right?
          A.   That's right.
Q.   And it was a road that would have never been built except that
Mr. Hall was building a cabin and asked you to get somebody out there to
          upgrade the trail to a passable road?
          A.   Yes.
Q.   And that's exactly what the Youderians did?
          A.   Yes.
```

Trial Transcript at 97-98.

Accordingly, we hold that there is substantial evidence in the record that a reasonable mind might accept as adequate to support a finding of ostensible agency determining that John had authority, acting as the ostensible agent on behalf of the Halls, to hire Youderian to complete the road improvement project.

Issue 2.

Whether there is substantial evidence in the record to support the finding that those claiming the agency (Youderian) acted reasonably.

The District Court found that because of Youderian's prior dealings with John and David in the construction of the lodge, Youderian had no reason to doubt John's authority regarding the road improvements.  Part of the test to determine whether an ostensible authority exists is to determine what a prudent person, acting in good faith, under the circumstances would reasonably believe the authority to be.  Bogle v. Ownerrent Rent to Own (1994), 264 Mont. 515, 519, 872 P.2d 800, 803 (citing Butler, 540 P.2d at 967).

Fred Youderian testified that, even though the construction of the lodge was a joint project between the Halls, John and Bill Egbert, it was John that contacted Youderian to install the water line for the lodge project.  Youderian also dug an electrical line from an existing power pole down to the site of the lodge and dug a basement and set the footings for the lodge.  Youderian relied on John for instructions on these projects.

Furthermore, because John owned the property where the cabin was being constructed, the Halls continually relied on his general knowledge of the property to assist them in building their cabin.  The Halls consulted John on several aspects of the cabin construction, including placement of the water lines, and included John in many of the discussions regarding construction of the cabin.

Thus, the conduct of the Halls and John gave Youderian the impression that John was working closely with the Halls on the cabin construction.  Therefore, it was not unreasonable for Youderian to believe that John was acting on the Halls' behalf in hiring Youderian to improve the road.

Accordingly, we hold that the District Court did not err in finding that Youderian acted reasonably.

### Issue 3.

Whether, as a matter of law, the ostensible agency was created.

"An agency may be created and an authority may be conferred by a precedent authorization or a subsequent ratification."  Section 28-10-201, MCA.  "A ratification can be made . . . by knowingly accepting or retaining the benefit of the act."  Section 28-10-211, MCA.

We have already stated that an ostensible agency is created when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent who is not really employed by him.  Section 28-10-103, MCA; Turjan, 901 P.2d at 81-82.  We also stated that an ostensible agency may be implied from the conduct and from all the facts and circumstances in the case and may be shown by circumstantial evidence.  Butler, 540 P.2d at 965.

The Halls, by retaining the benefit of the improved road, ratified John's actions in hiring Youderian for the road improvement project.  Moreover, the conduct of the Halls of consulting John on certain aspects of the cabin construction and of including John in the majority of the discussions regarding the cabin made it appear that the Halls considered John to be their agent in some respects.  Consequently, the Halls, by want of ordinary care in their  behavior regarding John led Youderian to believe that John was the Halls' agent and that John had the authority to hire Youderian to improve the road.

Accordingly, we hold that, as a matter of law, an agency relationship was created regarding the road improvement project.

### Issue 4.

Whether the District Court erred in concluding that the Halls are

estopped to deny John's ostensible authority.

The District Court concluded that it would be inequitable to allow the Halls to enjoy the benefit of the road while denying Youderian payment for its work in improving the road. Thus, the court determined that the Halls were estopped to deny John's authority to hire Youderian to construct the road for the Halls' benefit.

An estoppel arises when one, by act or acquiescence, causes another in good faith to change his position for the worse. Powers Mfg. Co. v. Leon Jacobs Enter. (1985), 216 Mont. 407, 411, 705 P.2d 1377, 1380 (citing Bagnell v. Lemery (1983), 202 Mont. 283, 244, 657 P.2d 608, 611). Moreover, in First Nat. Bank in Miles City v. Nunn (1981), 192 Mont. 487, 628 P.2d 1110, we stated:

It is well-settled that a principal who accepts the benefits of an agency transaction cannot later deny there was an agency. [Citations omitted.] Even if the agent's actions were unauthorized, the principal ratifies them by receiving the benefits and is estopped to deny the agency. [Citations omitted.]

Nunn, 628 P.2d at 1116.

Youderian, believing that John was acting on the Halls' behalf, incurred considerable expense in improving the road thereby changing its position for the worse. The Halls now have the benefit of an "all-weather road" to access their cabin and, having accepted the benefits of the agency transaction--i.e., the improved road--they cannot now deny there was an agency.

Accordingly, we hold that the District Court did not err in concluding that the Halls are estopped to deny John's ostensible authority.

Issue 5.

Whether the District Court erred in determining that John did not have ostensible authority as agent for the Halls to hire Youderian to complete the water system, sewer system and related landscaping project.

The District Court determined that Klind was the prime contractor in the construction of the cabin including the water system, sewer system and related landscaping project. As a result, the court concluded that Youderian must look to Klind for payment relating to the services provided to Klind.

Youderian contends that the "undisputed evidence" demonstrates that the Halls, through John, their agent, hired Youderian to not only construct the access road, but also, to perform the work necessary to install the water line and related services to the cabin. Contrary to Youderian's assertion, this contention is disputed by the evidence. At the May 30, 1996 trial of this matter, John Hill testified that he did not hire Youderian to do the work on the water and sewer systems. In addition, Fred Youderian

testified as follows:

Q.   Was anybody from Youderian Construction aware of the arrangement between George Klind and David Hall?

A.   No.

Q.   Sir, is it your testimony that Youderian Construction, that you or Youderian Construction, did not know that Dave Hall had hired George Klind to build him a cabin?

A.   Yes.

Q.   You did know that?

A.   Yes, we knew.

Q.   Okay, and--but John Hill didn't have anything to do with building the cabin; did he?

A.   Not to my knowledge.

Q.   So he didn't supervise you or tell you what to do or check you with respect to costs with any of the work done on the cabin itself; did he?

A.   No, no.

Q.   And John Hill didn't negotiate any prices for Youderian Construction or for David Hall with respect to the water line, the septic system, and those items performed on the cabin itself; isn't that correct?

A.   I believe so.

Q.   Okay.  Those were done through Youderian Construction's dealings with George Klind; isn't that correct?

A.   Yes.

Q.   Okay, and George Klind hired Youderian Construction to do those things on the cabin; didn't he?

A.   He directed us to do it.

Trial Transcript at 31-32.

Mike Youderian, the president of Youderian Construction, testified as follows:

Q.   And who contacted Youderian Construction to provide services for the water line and a septic system?

A.   Mr. Klind had contacted us for the septic system, and Mr. Klind contacted us for the water system.  We visited on occasion with Mr. Hill about those projects also, but--but Mr. Klind--I would say Mr. Klind directed us on both projects.

Trial Transcript at 50-51.

Q.   Okay, and you were contacted by George Klind to do the water line; correct?  I think that's what you said.

A.   Yes, sir.

Q.   Okay, and you were contacted by George Klind to do the septic system--

A.   Yes, sir.

Q.   --and the landscaping?

A.   Yes, sir.

Trial Transcript at 71.

Given this testimony, we hold that the District Court did not err in

determining
that John did not have ostensible authority as agent for the Halls to hire Youderian to
complete the water system, sewer system and related landscaping project as it was Klind,
not John, that hired Youderian to complete these projects.

We next must determine whether Klind was acting as the prime contractor on the project or merely as the Halls' agent. The District Court concluded that Klind held himself out as the prime contractor, hired numerous subcontractors to complete the various aspects of the cabin and was not acting as an agent on behalf of the Halls when he contracted with Youderian to develop a water system, sewage facilities and landscaping for the cabin.

Youderian contends that Klind was not the prime contractor as to the water system, sewer system or the landscaping since the contract between Klind and the Halls for construction of the cabin was silent regarding these projects. Youderian maintains that it was not until John telephoned the Halls on or about October 4, 1994, for the purpose of receiving authorization for a water line, that Youderian was hired to perform these tasks.

Although the August 13, 1994 contract between Klind and the Halls does not specifically state that indoor plumbing was to be included in the construction of the cabin, a sketch faxed to the Halls from Klind on July 6, 1994, one month prior to the signing of the contract, shows a bathroom complete with tub, sink and toilet facilities. While Youderian maintains that this does not mean that the cabin was to be equipped with indoor plumbing, clearly some type of water and sewer facilities were agreed upon prior to the parties entering into the construction contract. Furthermore, John testified that it was Klind who spoke to David in the October 4, 1994 phone call, and that the purpose of the call was to get the okay to relocate the water line, not to get authority to put one in.

The District Court found that Youderian was, at a minimum, put on inquiry notice as to Klind's authority relating to the Halls' liability for specific construction costs and that Youderian could have filed a construction lien pursuant to Title 71, chapter 3, part 5 of the Montana Code Annotated. The District Court noted that the construction lien statutes protect owners from having to pay twice for services provided by contractors as well as protecting contractors and subcontractors from nonpayment.

Youderian contends that they were not required to look to Klind for payment of Youderian's services since those services were not rendered to Klind and that the construction lien statutes do not apply in this case. Youderian claims that they

were led to believe that all of the work performed by them was authorized by the Halls and was to be paid for by the Halls.

Bob Evans (Evans), who installed the cabinets in the cabin and who had joined in the original complaint with Youderian against the Halls over payment of his services, testified that both he and Youderian always considered that the bills were owed by Klind. Evans further testified that he did receive a check from Klind for payment of his services but that Klind asked him not to cash it as Klind had not yet been paid by the Halls. Evans testified that he later learned that the Halls had paid Klind.

Accordingly, we hold that the District Court was correct in concluding that Klind was the prime contractor in the construction of the cabin including the water, sewer and landscaping projects and that Youderian must look to Klind for payment.

Issue 6.

Whether the District Court erred in denying Youderian's request for attorney fees.

Youderian contends that the District Court abused its discretion in denying Youderian's request for attorney fees on the basis of this Court's decision in Foy v. Anderson (1978), 176 Mont. 507, 580 P.2d 114, wherein this Court affirmed the trial court's award of attorney fees to a third party defendant who was forced to secure the services of an attorney and incur expenses through no fault of her own. Youderian asserts that a district court has general equity power to make an injured party whole and that an award of attorney fees is encompassed within that power.

The longstanding rule in Montana is that absent statutory or contractual authority, attorney fees will not be awarded. Tanner v. Dream Island, Inc. (1996), 275 Mont. 414, 429, 913 P.2d 641, 650 (citations omitted). In certain instances in which bad faith or malicious behavior are involved, an equitable award of attorney fees has been upheld. Tanner, 913 P.2d at 650. However, this equitable consideration is invoked infrequently and only where the prevailing party has been required to defend against an action, not when the prevailing party instituted the action. Tanner, 913 P.2d at 651; Goodover v. Lindey's Inc. (1992), 255 Mont. 430, 447, 843 P.2d 765, 775.

The case before us presents neither a statutory nor a contractual basis for awarding attorney fees; nor does it fall within one of the narrow exceptions to the general rule regarding attorney fees. Youderian was not forced to defend frivolous litigation through

no fault of its own.  On the contrary, Youderian obtained an attorney to initiate legal action.

Moreover, Youderian is not necessarily the prevailing party.  Although Youderian prevailed on its claim for the road improvements, the Halls prevailed on the remainder of the claims.  Therefore, we hold that the District Court did not abuse its discretion in denying Youderian's request for attorney fees.

Affirmed.

/S/  JAMES C. NELSON

We Concur:

/S/  J. A.  TURNAGE
/S/  W. WILLIAM LEAPHART
/S/  KARLA M. GRAY
/S/  JIM REGNIER