JUSTICE LEAPHART,
dissenting.
¶88 I dissent on issues two and three. The Court has failed to apply both parts of the test for determining ostensible authority. The Court has analyzed only the second step: “Part of the test to determine whether ostensible authority exists is to determine what a prudent person, acting in good faith, under the circumstances, would reasonably believe the authority to be.” Opinion, ¶ 42. While it is true that part of the test is, indeed, a “prudent person” perspective, the Court fails to analyze the first part of this Court’s long-established test for determining ostensible authority.
¶89 As we have held in Butler, Audit Services, and Yanzick: “The test is found in a determination of the exact extent to which the principal held the agent out or permitted him to hold himself out as authorized, and what a prudent person, acting in good faith, under the circumstances would reasonably believe the authority to be.” Butler Mfg. Co. v. J & L Imp. Co., 167 Mont. 519, 527, 540 P.2d 962, 969 (1975) (emphasis added); Yanzick v. Bd. of Trustees, 177 Mont. 459, 462-63, 582 P.2d 338, 340 (1978); Audit Servs. v. Elmo Rd. Corp., 175 Mont. 533, 540, 575 P.2d 77, 81 (1978). Ostensible authority is “such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.” Butler Mfg. Co., 167 Mont. at 524, 540 P.2d at 965. Ostensible authority “can be implied from the words and conduct of the parties and the circumstances of the particular case notwithstanding a denial by the alleged principal.” Youderian Constr. v. Hall, 285 Mont. 1, 7, 945 P.2d 909, 913 (1997) (citingAudit Serv., Inc., 175 Mont. at 541, 575 P.2d at 81). Further, the agency relationship “may be implied from the conduct and from all the facts and circumstances in the case and it may be shown by circumstantial evidence.” Youderian, 285 Mont. at 7, 945 P.2d at 912-13. As outlined below, both requirements for ostensible authority are met in this case. Axmen is liable.
¶90 The words, conduct, circumstances and facts of this case all indicate that Kimbrell was acting with ostensible authority on behalf of Axmen. Axmen’s sole officers, directors and shareholders were Edward Kimbrell, Grant Hanson, and Guy Hanson. Axmen, by “want of ordinary care,” had failed to monitor or set limits on Kimbrell’s *229 authority to act on behalf of the company. Kimbrell was Axmen’s president and was vested with authority from the Hanson brothers to conduct day-to-day operations. Indeed, he was the only person in charge of daily operations at Axmen. Kimbrell was held out by the company to enter propane procurement contracts, which included both large and small amounts. No meetings, resolutions or authorization were ever required prerequisites of Kimbrell entering contracts on behalf of the company. It is difficult to understand how the Court can assert that Kimbrell was “not given authority to speculate in this fashion” when there is no indication that the corporation had ever established that there were limits to the scope of Kimbrell’s authority in the first place. Opinion, ¶ 66.
¶91 The Court makes a strained distinction between what it describes as this “speculative” transaction and the other transactions Pruyn has engaged in on behalf of Axmen. Opinion, ¶ 66. The record shows that Axmen allowed Kimbrell to engage in both, and he did so without limitation or question from the corporation. In the course of his employment at Axmen, Kimbrell engaged in “hedging transactions,” in which he would purchase large amounts of propane at a fixed price, then sell it to customers at a future date. The company never objected. In fact, Guy Hanson’s testimony indicates that Axmen had no written policy, oversight, or internal controls establishing the scope of Krmbrell’s purchasing and/or hedging authority. And it is not this Court’s prerogative to decide how much authority is too much authority. That is a decision Axmen should have made and enforced prior to what amounted to a financially deleterious outcome for the company.
¶92 Further, the majority of Kimbrell’s actions as day-to-day business manager at Axmen were done on credit. Axmen admitted that Kimbrell was authorized to incur debt on behalf of Axmen. The corporation had no written policy articulating the scope of Kimbrell’s borrowing authority. Therefore, the ex post facto claim that Kimbrell acted outside of his authority is untenable given that the company never articulated the scope of the authority it now claims has been overstepped.
¶93 There is no indication that if the prices had risen instead of dropped, that Axmen would have rejected the propane and large profits resulting from Kimbrell’s dealings on behalf of Axmen. It was only when the company suffered a financial loss that the Hanson brothers suddenly claimed that Kimbrell acted outside the scope of his authority. This is the exact type of “want of ordinary care” on the part *230 of Axmen that satisfies the first prong of the ostensible authority test. The existence of ostensible authority is simply not dependent on the success or failure of the agent’s dealings on behalf of the company.
¶94 In determining whether Kimbrell was authorized to enter the transaction with Pruyn as a representative of Axmen, the Court focuses solely on the promissory note and the alleged individual liability it created. We have, however, made clear that the ostensible authority analysis is not a “four corners” inquiry. It is measured by the conduct, all the facts and circumstances in the case, and may be shown by circumstantial evidence. Youderian, 285 Mont. at 7, 945 P.2d at 912-13. Likewise, the Court improperly focuses on the inability of Axmen to store the propane resulting from the transaction. Opinion, ¶ 52. Kimbrell had done this type of transaction in the past without objection from the corporation. Regardless, Axmen’s ability to store the propane plays no part in the legal determination required under the two-part ostensible agency analysis. The germane fact here is that Axmen has a long track record of allowing Kimbrell to buy propane with no limits on his scope of authority.
¶95 The weight of responsibility under the first prong of the ostensible authority test lies not on Kimbrell’s or Pruyn’s shoulders, but on the shoulders of the corporation to exercise “ordinary care” in establishing the boundaries of its president’s authority. Under the legal standard for ostensible authority, the corporation-not Pruyn-authored this misfortune by failing to establish the scope of their president’s authority.
¶96 The Court next concludes that the second prong of the ostensible authority test is not satisfied. Opinion, ¶ 54. The assertion is not supported by any analysis under the “prudent person” standard. Instead, the Court states: “Pruyn himself was not convinced that Kimbrell had ostensible authority to bind Axmen to the note.” Opinion, ¶ 54. This speculation about a party’s thought process plays no role in the two-step analysis required by this Court’s precedent on ostensible authority. The ostensible authority test does not ask the Court to divine whether Pruyn was convinced. It requires this Court to embark on a careful inquiry regarding “what a prudent person, acting in good faith, under the circumstances would reasonably believe the authority to be.” Butler Mfg. Co. v. J & L Imp. Co., 167 Mont. at 527, 540 P.2d at 969; Yanzick v. Bd. of Trustees, 177 Mont. at 462-63, 582 P.2d at 340.
¶97 This second prong of the ostensible authority test is satisfied. Kimbrell met with Pruyn several times to discuss the loan and details about the company. During the meetings, Kimbrell gave Pruyn *231 information relating to Axmen’s assets, Axmen’s cash flow and Axmen’s accounts receivable. Pruyn himself testified that based on the documentation from Axmen and his own investigation into the company’s reputation and overall business prospects, he decided to lend Axmen $544,500. A prudent person in Pruyn’s position would believe that Kimbrell had authority to act on behalf of Axmen: he was the company’s president, ran day-to-day business operations, and appeared to have the authority to possess and share the company’s private financial documents.
¶98 If the two men intended to draft a loan agreement based solely on individual liability, as the Court concludes, Kimbrell would not have provided or needed to provide Pruyn with information about the company’s assets, cash flow and accounts receivable. He would have simply shown Pruyn his own personal financial documents. The same applies to the Hanson brothers. Only their personal documents would have been necessary, not the corporation’s financial documents. It was Pruyn’s understanding that the money was to be used by Axmen to buy a tract of land on which a large number of propane tanks were to be stored. The financial disclosures and stated purpose do not suggest a personal, individual propane storage project.
¶99 A prudent person under these circumstances would reasonably believe that Kimbrell, after providing and discussing the company’s private financial documents, was acting on behalf of the company, not himself. Kimbrell had engaged in business transactions-whether they be hedging transactions or otherwise-for years on behalf of the company without a word from the Hanson brothers. The facts, conduct, and circumstances clearly indicate that Axmen’s “want of ordinary care” allowed Kimbrell to act, unbridled, on behalf of the corporation, and that a prudent person would have believed that Kimbrell was authorized to act on the company’s behalf. Therefore, both of the required elements of the ostensible authority test are satisfied.
¶100 The Court analyzes this case under § 30-3-403(2), MCA. Opinion, ¶ 50. However, it is subsection one that directly applies. The statute reads as follows:
If a person acting, or purporting to act, as a representative signs an instrument by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented person would be if the signature were on a simple contract. If the represented person is bound, the signature of the representative is the “authorized signature of the represented person” and the *232 represented person is liable on the instrument, whether or not identified in the instrument.
Section 30-3-403(1), MCA (emphasis added). The presence of the Axmen name on the contract is simply not necessary for the company to be held liable. Kimbrell, acting as a representative of Axmen, signed his name (“the signer”). Under the statute, Axmen (the “represented”) is bound by the signature, regardless of whether Axmen was identified in the instrument. Section 30-3-403(1), MCA. Kimbrell, via ostensible authority, signed as an authorized representative of the corporation, thus making Axmen liable.
¶101 Issue three addresses the unjust enrichment claim. The doctrine of unjust enrichment is an equitable means of preventing one party from benefitting from his or her wrongful acts and requires a showing of misconduct, fault or that one party took advantage of the other. LeFeber v. Johnson, 2009 MT 188, ¶ 26, 351 Mont. 75, 81, 209 P.3d 254, 260; Albinger v. Harris, 2002 MT 118, ¶ 21, 310 Mont. 27, 33, 48 P.3d 711, 716; Randolf v. Peterson, Inc. v. J.R. Simplot Co., 239 Mont. 1, 8, 778 P.2d 879, 883 (1989).
¶102 Kimbrell, with ostensible authority from the corporation, borrowed money from Pruyn. The record shows that the money was wired to the Axmen Propane account at Powder Horn. Kimbrell is the only person who signed the wire transfer form.[1] The “Originator’s Name” space reads: “Axmen Propane, Inc.-Reference.” The “Originator’s Address” is filled in with the business address of Axmen Propane. While “Pruyn Ranch” is written in a blank space at the top of the page, the wire is signed by Edward Kimbrell, Axmen’s president. The critical fact here, however, is that the money was received by Powder Horn, credited to Axmen Propane’s account, and paid off the propane futures loss for Axmen Propane. The company unjustly benefited from the acts of its president. This scenario goes to the heart of unjust enrichment, in which the goal is to identify and ameliorate a breed of misconduct in which one party unjustly benefits from its own actions.
¶103 The Court bases its conclusion on the observation that the Hanson brothers were unaware of Krnibrell’s purchase and the loan. However, under this Court’s test for ostensible authority, it is clear *233 that the brothers granted Kimbrell the authority to engage in business on the corporation’s behalf. Therefore, the focus of the analysis should not be on the brothers’ alleged ignorance, but rather on the misconduct of the company through Kunbrell’s ostensible authority. Axmen directly benefited from the misconduct of the corporation through its president, who illegitimately borrowed from Pruyn and applied the proceeds of the loan to pay off Axmen’s debt to Powderhorn. Unjust enrichment therefore applies.
¶104 For the above reasons, I would reverse the District Court’s summary judgment ruling on Pruyn’s contract and unjust enrichment claims.
CHIEF JUSTICE McGRATH joins in the dissenting Opinion of JUSTICE LEAPHART.

 The Court refers to another document, titled “Wire/Fund Transfer Payment Order.” The form we reference and the payment order reflect the same transaction. There is no indication in the record regarding the precise interaction or relative weight the two forms should be granted. Regardless, both documents reflect the reality that the money was used to pay off the Power Horn Petroleum debt.